375 P.2d 370

**The STATE of Arizona, Appellee,**

v.

**Dick Dean HOLLIDAY, Appellant.**

**No. 1247.**

Supreme Court of Arizona.

En Banc.

Oct. 18, 1962.

---

Martin H. Schulman, Tucson, for appellant.

Robert W. Pickrell, Atty. Gen., Phoenix, Harry Ackerman, Former Pima County Atty., Tucson, Jack I. Podret, Pima County Atty., Tucson, Arthur R. Buller, Deputy County Atty., Tucson, for appellee.

LOCKWOOD, Justice.

The defendant, Dick Dean Holliday, was found guilty by a jury of the crime of attempted first degree burglary. From that judgment of conviction, he has perfected an appeal to this court.

The information filed in Pima County on September 8, 1961, charged that the defendant on August 25, 1961, attempted in the nighttime to commit burglary of the building located at 1120 South Wilmot Avenue, Tucson, Pima County, Arizona, to which defendant entered a plea of not guilty. At the trial the prosecution proceeded upon the theory that the defendant had aided and abetted two other persons, Robert Norgard and Dorothy Schroeder, in the attempted burglary. By such action he was brought within the purview of A.R.S. § 13–139 [1] and was thus a principal to the

---

1. "All persons concerned in the commission of a crime whether it is a felony or misdemeanor, and whether they directly commit the act constituting the offense, or aid and abet in its commission, or, not being present, have advised and encouraged its commission, and all persons counseling, advising or encouraging chil-

attempted crime of burglary. At the end of the State's case in chief the defense moved for a directed verdict. This motion was renewed at the close of the defendant's case and again after both sides had used a rebuttal witness. At the latter time the motion was denied, and the case was submitted to the jury which found a verdict of guilty. The defendant now bases much of his appeal on the fact that the trial court erred in not granting a directed verdict at the time the State rested and further erred by not granting the renewed motion when the defense rested.

The facts material to these assignments of error are as follows: On August 25, 1961, at approximately 2:00 o'clock A.M. Officer Erdman of the Tucson Police Department was directed to investigate an alleged burglary at a tavern. As he approached the tavern he observed a yellow Cadillac approximately fifty to sixty yards north of the building. A person later identified as the defendant was bending over the left front fender, leaning into the engine compartment, the hood of the car being in an upright or raised position. Defendant was wearing a white T-shirt, and in the glare of the headlights the officer observed the defendant's face as he looked up. The officer, seeing movement on the

roof of a nearby building, climbed to the roof and discovered two individuals crouching there. One fled across several roof tops, with the officer in pursuit. The chase ended when the fleeing man jumped down into a vacant lot, ran to the parked Cadillac, and jumped into the right-hand side of the vehicle in the front seat. At the same time the defendant, who was still standing by the raised hood of the car, slammed it down and "hobbled" (defendant had only one leg) into the car on the left, or driver's side.

Another police car arrived on the scene and gave chase to the two persons in the Cadillac, but lost it. An officer in the police car observed the driver was wearing a white short sleeved shirt.

Officer Erdman returned to the place where he had originally seen the two persons on the roof, and found Dorothy Schroeder there. He also found where someone had attempted to break into the tavern below, and certain tools nearby. Later on the same night, about 4:00 A.M. the yellow Cadillac was located by the police. Two men in the car were identified as Robert Norgard (who at that time was driving) and the defendant.

Defendant testified at the trial and contradicted many of the statements of the

dren under the age of fourteen years, lunatics or idiots, to commit a crime, or who, by fraud, contrivance or force, occasion the drunkenness of another for the purpose of causing him to commit a

crime, or who by threats, menaces, command or coercion, compel another to commit a crime, are principals in any crime so committed."

police officers. He claimed that he was just a passenger in the car with Schroeder and Norgard, that Norgard was driving and stopped the car claiming that it was broken down, that Norgard asked the defendant to put in some oil while Norgard and Schroeder went for help, and that he had no knowledge whatsoever that they intended to burglarize any place. He also claimed that he at no time drove the automobile, that it was Norgard who got in the driver's seat and who drove the car away, that he did not know they were being chased the first time by a police car and that he didn't know about the attempted burglary until Officer Henry finally apprehended them.

 There is no merit in the assignments of error based on the trial court's refusal to direct a verdict of acquittal. A motion for a directed verdict questions the sufficiency, not the competency of the evidence. Douglas v. State, 26 Ariz. 327, 225 P. 335 (1924). It is also well established that evidence is sufficient to go to the jury where it discloses facts from which the jury may legitimately deduce either of two conclusions and where there is substantial evidence that the defendant committed the crime of which he is accused. State v. Merryman, 79 Ariz. 73, 283 P.2d 239 (1955); State v. King, 66 Ariz. 42, 182 P. 2d 915 (1947).

From the foregoing facts it is clear that there is sufficient evidence to sustain the trial court's denial of defendant's motions for directed verdicts. From the foregoing facts in evidence, the jury could have determined, as it evidently did, that defendant aided and abetted an attempted first degree burglary.

 Defendant's next assignment of error is that his rights were greatly prejudiced when asked on cross-examination whether he had ever informed any magistrate or police official of what he knew about the case. The question was later withdrawn, but defendant urges this did not cure the error, and hence he did not receive a fair and impartial trial. The following portion of the testimony pertains to this assignment of error. The prosecutor asked (referring to the time the police were pursuing the Cadillac car):

"Q. During this time, did you ever ask Norgard to stop this car and let you out?

"A. I wanted him to take me back to civilization. It was desert, no houses, so on, and there was no buses running there.

"Q. So for two hours, for approximately two hours, the two of you were running all over the city in this car being chased by the police?

"A. We drove down to what he said was his home. It was a residential district I had canvassed with fire extin-

guishers down around the Base, Davis-Monthan Base. Thirty-third Street I believe was the street.

"Q. According to your testimony, the first you knew that a burglary, or some type of crime had been committed, was after Henry finally apprehended you two, is that right?

"A. Yes.

"Q. Did you ever inform any magistrate or any police official of what you knew about this case?

"A. Well * * *.

"Q. Please just answer yes or no.

"A. Did I ever inform a magistrate?

"Q. Give a statement, a written or oral statement to a magistrate or to any police official as to what you knew about the incident involving Norgard and Mrs. Schroeder."

Defense counsel objected, which was discussed with the court out of hearing of the jury, after which the question was withdrawn.

The defendant claimed this questioning by the prosecution was in violation of A.R.S. Rules of Criminal Procedure, Rule 24, 17 A.R.S.,[2] and likened it to the questioning in the case of State v. Garaygordobil, 89 Ariz. 161, 359 P.2d 753 (1961). In Garaygordobil the court held that the trial court committed reversible error in permitting the prosecution to ask the defendant, on cross-examination, why he didn't take the witness stand to testify at a preliminary examination, since this raised an inference of the defendant's guilt. In this case, at no time during the questioning was there any mention of a preliminary hearing or that defendant failed or refused to testify or make a statement at any previous hearing. No inference was raised as to his guilt, as occurred in Garaygordobil.

■ The last assignment of error was that the trial court refused to give defendant's requested instruction No. 12.[3] However, upon reviewing the instructions as a

2. The rule is: "When the examination of the witnesses for the state is closed, the magistrate shall inform the defendant:
"1. That he may make a statement, not under oath, regarding the charge against him.
"2. That he is accorded such right in order to enable him, if he wishes, to answer the charge and to explain the facts appearing against him.
"3. That he may refuse to make any statement and that such refusal may not be used against him at the trial, but that if he makes such statement whatever he says may be given in evidence against him at the trial."

3. Defendant's Requested Instruction No. 12: "You are instructed that in order to convict the defendant as an aider and an abetter there must be proof that not only did he aid the actor but that at the same time he shared the criminal intent of him who actually committed the offense."

 

whole, we are of the opinion that the law embodied in this instruction was adequately covered by other instructions.

Finding no prejudicial error, the judgment is affirmed.

BERNSTEIN, C. J., UDALL, V. C. J., and STRUCKMEYER and JENNINGS, JJ., concurring.