416 P.2d 409

The STATE of Arizona, Appellee,

v.

Maurice E. TURNER, Jr., Appellant.

No. 1619.

· Supreme Court of Arizona.

In Division.

July 7, 1966.

Darrell F. Smith, Atty. Gen., Phoenix, Norman E. Green, Pima County Atty., Carl Waag, Deputy County Atty., Tucson, for appellee.

Joseph H. Soble, Tucson, for appellant.

McFARLAND, Justice.

Maurice E. Turner, Jr., hereinafter referred to as defendant, was convicted and sentenced to serve not less than five, nor more than six years, in the Arizona State Prison for the crime of assault with intent to commit murder, in violation of A.R.S. § 13–248. From the conviction and sentence, and denial of his motion for new trial, defendant appeals.

On the night of February 19, 1965, Louis Williams, caretaker and general handyman at a residence located at 2806 Camino Principal, Tucson, Arizona, was watching

television with his employer. Some time around 10:00 p. m. a dog in the house became nervous, growled and rushed at the front door. Williams went outside to investigate, first stopping at his room to pick up his .25 caliber pistol. Williams proceeded to check the area until he heard several shots and saw flashes, and immediately began firing his pistol in that direction. Williams testified he heard a "whish" as bullets passed him and heard rustling in the bushes. He counted four shots in all fired at him, and he fired six shots at the flashes. At one point he heard a grunt and scuffling, and no more shots were fired.

Williams then went back into the house and called the Sheriff's Department and his assailant, or assailants, departed. Williams stated he found a sledgehammer in the vicinity of the location of the flashes; that he had not noticed the sledgehammer when he watered that area the same day. He was unable to determine whether more than one person was located at the point from which the shots and flashes appeared to originate. He testified that some two days after the shooting incident he found two holes in the carport of the residence and two spent bullets on the carport floor.

The next day after the shooting, around 6:00 a. m., the defendant, accompanied by his brother and father, entered Tucson Medical Center for treatment of a wound, and the hospital personnel notified both the City Police of the City of Tucson and the Pima County Sheriff's Office that defendant had entered the Tucson Medical Center for treatment.

An investigator from the Pima County Sheriff's Office arrived at the Tucson Medical Center at approximately 8:00 a. m. The doctor removed a bullet from defendant's head and shortly thereafter he turned to a small group of men in the emergency room including policemen and detectives, held out the bullet which he had removed from defendant's head, and said something to the effect that "I believe you want this object." He then handed the

bullet to the investigator from the Pima County Sheriff's Office.

The bullet was subsequently sent to the Federal Bureau of Investigation Laboratory in Washington, D.C., where positive identification was made through ballistics tests. From these tests it was determined that the bullet found in defendant's head was from the .25 caliber pistol belonging to Williams, which was used by him to return the fire of his assailant, or assailants. A warrant for defendant's arrest was issued on March 4, 1965, and he was arrested shortly thereafter.

Defendant raises two assignments of error. He contends the trial court erred in overruling defendant's objection to admission of the results of ballistics tests run on the bullet removed from his head on grounds the bullet "was illegally seized, based upon an unreasonable search and seizure, there being no justification, consent, or waiver for the search and seizure of said bullet by the Sheriff's Deputies."

Our statute requires, under penalty of law, that medical personnel notify the police when called upon to treat a patient for a gunshot wound which may have resulted from an altercation.

"A.R.S. 13–1206. Duty of physician or attendant upon treating certain wounds; punishment for failure to notify

"A. A physician, surgeon, nurse or hospital attendant called upon to treat any person for gunshot wounds, knife wounds or other material injury which may have resulted from a fight, brawl, robbery or other illegal or unlawful act, shall immediately notify the chief of police or the city marshal, if in an incorporated city or town, or the sheriff, or the nearest police officer, of the circumstances, together with the name and description of the patient, the character of the wound and other facts which may be of assistance to the police authorities in the event the condition of the patient may be due to any illegal transaction or circumstances.

"B. Any violation of the provisions of this section by a physician, surgeon, nurse or hospital attendant, is a misdemeanor punishable by a fine of not less than twenty-five nor more than fifty dollars, by imprisonment in the county jail for not less than thirty nor more than sixty days, or both."

Defendant voluntarily entered the Tucson Medical Center for treatment of his injury. When the nurse on duty first informed the authorities of the gunshot wound she acted pursuant to A.R.S. § 13–1206, supra. Presence of the police officers at the Tucson Medical Center emergency room for purposes of investigation of defendant's injury may not be challenged in light of the statute. The officers were acting pursuant to their duty in furtherance of their investigation when they remained in the emergency room in order to gain information as the result of the removal of the bullet. We must conclude from the fact the defendant went to the Tucson Medical Center for treatment that it was his express wish that the doctor remove the bullet if such was reasonable in the course of treatment of defendant's injury.

 Defendant contends there was an unreasonable search and seizure. We cannot agree with this contention. In order to constitute such a violation of constitutional rights there must first be a search. In Gerard v. State, 237 Ark. 287, 372 S.W. 2d 635, the court stated:

" * * * From the evidence in this case it appears to us that the premises were not of a private nature. On the contrary, they were of such nature that the general public, including teenagers, was indiscriminately admitted. The Constitutional guarantee against unreasonable search and seizure does not apply to entry into a public place. * * * "

* * * * * *

"Also, in the instant case no search was required and, therefore, the provisions of our Federal and State Constitutions are not applicable. The evidence secured by the police officers was open to the eye and hand. It was unnecessary to conduct a search. 47 Am.Jur., Search and Seizure, § 20, p. 516; 79 C.J.S. Searches and Seizures §§ 9, 69, pp. 788, 850; 89 A.L.R. 2d, p. 773; Ellison v. United States, 93 U.S.App.D.C. 1, 206 F.2d 476 (1953). There was no exploratory search by the officers seeking to uncover and find any papers and effects of the appellant which were hidden or concealed from their view. Officers of the law are not required to close their eyes and ignore such illegal activities after they are lawfully on the premises. McDonald v. United States, 83 U.S.App.D.C. 96, 166 F.2d 957 (1947); Bonn v. State, (Alas. 1963) 372 P.2d 785." 372 S.W.2d at 637

In Ruiz v. State, 32 Ariz. 121, 256 P. 362, police officers suspected the defendant of a crime and were awaiting his appearance to arrest him. Defendant drove past the police but one wheel of his car ran into a ditch and brought the car to a halt. The officers approached the open car and saw a keg inside which later was found to be filled with whiskey. The court, in affirming the conviction, stated:

"But we do not think the evidence shows a search of the automobile before the arrest. It appears the car was an open one and was not halted by the officers at all. The latter merely approached it after it stopped in the ditch and looking over the side without touching it saw therein a keg containing the contraband liquor. To say that such proceedings constituted a 'search' of the automobile would be stretching the English language to an unreasonable length. The officers saw the defendant in the actual commission of a misdemeanor before any search was made and rightly arrested him. The liquor was then seized. The keg and its contents were properly admitted in evidence." 32 Ariz. at 123, 256 P. at 362

In the instant case the officers, pursuant to their duty, were investigating a gunshot wound. They went to the Tucson Medical

Center after notice from its authorities and did not force their way into the premises. The bullet secured by the officers was in the open and in plain view when the doctor walked up to them and offered the bullet in his outstretched hand. "To say that such proceedings constituted a 'search'" of the defendant "would be stretching the English language to an unreasonable length." Ruiz v. State, supra. Since no search was required, the provisions of both the Federal and State constitutions are not applicable. Gerard v. State, supra.

Defendant contends the lower court erred in denying his motions for directed verdict on the grounds the evidence was insufficient to show defendant guilty of the crime charged; to wit, assault with intent to commit murder.

This court, on review of a lower court's denial of a motion for directed verdict, will view the facts in a light most strongly in favor of upholding the verdict of the jury. State v. Manis, 95 Ariz. 27, 386 P.2d 77. A motion for directed verdict does not question the competency of evidence, rather its sufficiency. State v. Holliday, 92 Ariz. 168, 375 P.2d 370. There is no duty on the trial court to grant such a motion where there is substantial evidence the defendant is guilty of the crime charged. State v. Silvas, 91 Ariz. 386, 372 P.2d 718, cert. denied, 371 U.S. 970, 83 S.Ct. 552, 9 L.Ed.2d 539. There is sufficient evidence to submit a case to a jury where facts are disclosed from which the jury may legitimately reach either of two verdicts, and where there is substantial evidence that the defendant committed the crime charged. State v. Holliday, supra.

In the instant case the only evidence connecting defendant with the crime is the bullet removed from his head which was proved to have been fired from Williams' pistol. Defendant presented no evidence in his own behalf, and in his brief, concedes Williams fired the bullet and that it later lodged in defendant's head.

A conviction based solely upon circumstantial evidence must not only be consistent with guilt, but inconsistent with every reasonable hypothesis of innocence. State v. Bearden, 99 Ariz. 1, 405 P.2d 885; State v. Cox, 93 Ariz. 73, 378 P.2d 750. A conviction based upon circumstantial evidence alone will be upheld where it excludes every reasonable hypothesis of innocence. State v. Betts, 71 Ariz. 362, 227 P.2d 749.

While defendant, in his brief, discusses various possibilities or inferences which the jury might have considered in reaching a verdict, the record is void of any evidence to support such inferences. We find no conflict in the evidence. The testimony of Williams presents substantial evidence that the crime of assault with intent to commit murder was committed. There is no evidence to refute his testimony that he shot in the direction of his assailant and heard a grunt and scuffling. Nor did defendant present any evidence to refute any other evidence presented against him or offer an explanation of how he received his wound.

Although this court is not concerned with mere conflicts in the evidence where there is substantial evidence in support of the verdict, in the instant case we do not find any conflict in the evidence. State v. Rivera, 94 Ariz. 45, 381 P.2d 584.

In State v. Thompson, 101 Ariz. 38, 415 P.2d 566 (June 16, 1966), in answer to a contention made that circumstantial evidence was not sufficient to support the conviction in that case, we said:

"The cumulative effect of the evidence surpassed mere suspicion or mere probability of guilt and it was of cogent and convincing nature. Each fact is incapable of explanation upon any other rational hypothesis than that of guilt." 415 P.2d at 568.

We therefore hold that the trial court correctly denied defendant's motions for directed verdict.

Judgment affirmed.

STRUCKMEYER, C. J., and UDALL, J., concur.