Noble David **JELLUM**, Jr., Petitioner-Appellee,

v.

**Hoyt C. CUPP, Superintendent, Oregon State Penitentiary, Respondent-Appellant.**

No. 72–1418.

United States Court of Appeals, Ninth Circuit.

March 6, 1973.

John H. Clough, Asst. Atty. Gen. (argued), Lee Johnson, Atty. Gen., Salem, Or., for respondent-appellant.

L. A. Aschenbrenner (argued), of Marmaduke, Aschenbrenner, Merten & Saltveit, Portland, Or., for petitioner-appellee.

Before ELY, WRIGHT and WALLACE, Circuit Judges.

EUGENE A. WRIGHT, Circuit Judge:

The state has appealed from a judgment of the district court, granting a writ of habeas corpus and directing the release of Jellum unless the state should reindict him. Although other issues are raised, we agree with the district court that the only substantial question is whether the statute under which Jellum was convicted is unconstitutionally vague. We agree with the district court's conclusion that it is and we affirm.

Jellum pleaded guilty to a charge of "committing an act of sexual perversity." [1] was sentenced, and later sought post-conviction relief in the Oregon courts. His petition was dismissed [2] as was a petition for review by the Oregon Supreme Court. He then applied to the district court for relief.

Although Jellum pleaded guilty to the state charge he may still challenge the constitutionality of the statute under which he was sentenced. Ex parte Siebold, 100 U.S. 371, 377, 25 L. Ed. 717 (1879).

The Oregon Supreme Court has recognized the vagueness of the term "act of sexual perversity" and has limited its application to a narrow range of prescribed conduct. Under the state court's construction in State v. Anthony,

---

1. The entire statute reads as follows:
    O.R.S. 167.040(1). "Any person who commits sodomy or the crime against nature, or any act or practice of sexual perversity, either with mankind or beast, or sustains osculatory relations with the private parts of any person, or permits such relations to be sustained with his private parts, shall be punished. . . ."

In 1971 the Oregon legislature rewrote their laws dealing with sexual behavior, and this statute is no longer on the books. Jellum, however, was sentenced by the state court in May 1969.

2. Jellum v. Cupp, 4 Or.App. 210, 476 P.2d 205 (1970).

179 Or. 282, 169 P.2d 587, cert. denied 330 U.S. 826, 67 S.Ct. 865, 91 L.Ed. 1276 (1946), three elements are required for a violation: (1) the direct involvement of a sex organ; (2) unnatural conduct contrary to the course of nature which (3) is performed for the purpose of accomplishing abnormal sexual satisfaction on the part of the actor. Such a narrowing construction redefines the statute and is binding on federal courts. Shuttlesworth v. Birmingham, 382 U.S. 87, 86 S.Ct. 211, 15 L.Ed.2d 176 (1965).

■ The district court concluded that even as limited by *Anthony* the statute is unconstitutionally vague. The relevant criteria for vagueness are spelled out in Giaccio v. Pennsylvania, 382 U.S. 399, 402–403, 86 S.Ct. 518, 520–521, 15 L.Ed.2d 447 (1966):

> "It is established that a law fails to meet the requirements of the Due Process Clause if it is so vague and standardless that it leaves the public uncertain as to the conduct it prohibits or leaves judges and jurors free to decide, without any legally fixed standards, what is prohibited and what is not in each particular case."

■ Of course, we must consider the constitutionality of the statute in light of the conduct with which Jellum is charged. One to whom application of a statute is constitutional will not be heard to attack the statute on the ground that it would be unconstitutional as applied to other persons or other situations. United States v. National Dairy Products Corp., 372 U.S. 29, 83 S.Ct. 594, 9 L.Ed.2d 561 (1963); United States v. Raines, 362 U.S. 17, 80 S.Ct. 519, 4 L.Ed.2d 524 (1960).

Jellum was charged with accosting a woman in a shopping center parking lot, knocking her down in a scuffle which may have indicated some intent to rape, and then urinating on her.

Our inquiry then is twofold: did the statute, as limited by *Anthony* (1) give Jellum adequate notice that his conduct was prohibited, or (2) give jurors legally fixed standards from which they could have determined whether Jellum's act was or was not prescribed by the statute?

We do not reach the first question in our holding that the statute, as limited, supplies no legally fixed standards and constitutes a grossly unconstitutional delegation of legislative power to the prosecutor, judge and jury.

■ In determining whether a statute is unconstitutionally vague, courts have traditionally looked to the common law background for interpretation of broad terms. Winters v. New York, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948). Employing that search with reference to the phrase "unnatural conduct contrary to the course of nature," we find that it had no definite meaning at common law. A similar term, "crime against nature," did have a definite meaning and has generally been held to be synonymous with sodomy; however, the Oregon Supreme Court has held that sodomy is not an "act of sexual perversity." *Anthony, supra,* 169 P.2d at 598. Similarly, the term "abnormal sexual satisfaction" has no common law background.

■ Recourse to the dictionary gives us no enlightenment either.[3]

3. Webster's Third New International Dictionary, for example gives us the following definitions:
*Unnatural*
:not innately characteristic of the nature of man
:not being in accordance with nature
. . .
:not being in accordance with normal feelings or behavior

:PERVERSE, ABNORMAL
:inconsistent with what is natural or expected
* * * * *
*Nature*
* * * * *
:normality especially as prescribed by law for sexual relations—usually used in the phrase AGAINST NATURE
* * * * *

There is simply no commonly accepted, definite meaning of the phrase "unnatural conduct contrary to the course of nature." Accordingly, we must conclude that the statute, as construed in *Anthony*, supplies a jury (or a judge sitting without a jury) no legally fixed standards under which to determine guilt. Further, we note that the statute does not supply any standard or basis for a trial judge to apply in submitting one case to a jury or refusing to submit another for jury consideration. This same looseness in the statutory language would allow a state prosecutor to use the statute selectively to rid the community of persons subjectively deemed guilty of committing "abnormal" or "unnatural" acts.

As the trial judge stated in his well-reasoned opinion:

"The varieties of human sexual behavior are encyclopedic. A beginning inventory, from arson to zooerasty, can be found in R. von Krafft-Ebing, *Psychopathia Sexualis*. If a statute allows the district attorney to pick through this catalog and make a felony of any sex-related act that offends his concept of 'normal' behavior, the statute is, of course unconstitutional."

It is not enough to say that the prosecutor, judge, and trier of fact may exercise their own common sense and good judgment in determining what is "unnatural conduct" and "abnormal sexual satisfaction." The Oregon Supreme Court itself expressly rejected that argument in State v. Hodges, 254 Or. 21, 457 P.2d 491 (1969). That case involved a statute making it criminal to engage in conduct which "manifestly tends to cause" a minor to become delinquent. The court found this statute unconstitutionally vague because of the lack of any standards as to the causes of delinquency.[4]

Jellum's guilty plea admitted an episode of socially obnoxious behavior which indicates the need for the State of Oregon to seek institutional care for him. However, since the terms "unnatural conduct contrary to the course of nature" and "abnormal sexual satisfaction" are so vague as to supply no standards by which the prosecutor, judge, or jury could decide whether Jellum's conduct was prohibited or not, we hold that the State of Oregon must use other, constitutional means to secure its goal.

 In the district court, the state advised the court that Jellum had exhausted his state remedies. For the first time, on this appeal, the state suggests that failure to appeal to the United States Supreme Court constituted a deliberate by-pass of state remedies. The district court did not consider the question and we decline to do so, under the circumstances.

The Order of the district court is affirmed.

*Normality*
:the quality or state of being normal
:conformity with the norm

---

4. We note that in State v. Anthony, *supra*, the court relied on earlier cases which were reversed by State v. Hodges, *supra*.