507 P.2d 1003

**STATE of Arizona, Appellee,**

v.

**Bernard Lee SNODGRASS, Appellant.**

**No. 1 CA–CR 230.**

Court of Appeals of Arizona,
Division 1,
Department A.

March 27, 1973.

Rehearing Denied May 14, 1973.

Gary K. Nelson, Atty. Gen., by John J. Dickinson and Thomas A. Jacobs, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender by Anne Kappes, Deputy Public Defender, Phoenix, for appellant.

DONOFRIO, Presiding Judge.

This is an appeal by defendant Bernard Lee Snodgrass from a conviction by a jury of the crime of Possession of Marijuana in violation of A.R.S. § 36–1002.05, as amended 1961, and from the judgment and sentence of three to five years imposed thereon.

The defendant assigns two crucial errors by the trial court:

1. That it was error to admit into evidence marijuana which was found in the search of a car defendant was driving as being illegally obtained; and

2. That it was error to admit into evidence certain statements made by defendant at the time a bottle of pills was found during the search of the car.

The first question deals with whether the trial court should have granted defendant's motion to suppress the evidence, the evidence being the marijuana found during the search of the car defendant was driving. The facts are as follows. About 1:00 p. m. on January 21, 1969, Officer McCracken and Detective Maskell, members of the Phoenix Police Department, appeared before the Justice of the Peace of Northwest Phoenix Precinct and obtained a search warrant. At that time the officer presented an affidavit for the warrant which read in part that:

" . . . on or about the 21 day of January, 1969, in the city of Phoenix, County of Maricopa, State of Arizona, the crime of Illegal Possession of Dangerous Drugs, Marijuana LSD & Heroin was committed by Bernard Snodgrass and Linda Adkins in the manner following, to-wit: Bernard Snodgrass and Linda Adkins, 1802 N 37 Drive, are at this time in possession of dangerous drugs and narcotics (Marijuana, LSD & Heroin) in their home, person & Snodgrass

Vehicle, a [sic] early model Blue sports Car.",

and in support stated:

"That the following facts establish the existence of grounds for the issuance of a search warrant for the search of the persons, premises, and buildings, and motor vehicles or trailer described in paragraph three (3) herein, and further, establish probable cause for believing that said grounds exists; Affiant received information from a past proven reliable and confidential informant that Bernard Snodgrass & Linda Adkins of 1802 N 37 Drive at this time have in their possession narcotics (dangerous drugs, Marijuana, LSD & Heroin) in their home, on their person and in their vehicle, an early model blue sports car. Identity of informant should not be revealed as revealment could result in serious bodily harm or death to the informant. Said information having been obtained by the informants on or about January 21, 1969 or within the past 5 days."

In addition, the officer informed the magistrate the following:

"I had talked to an informant, who in the past had been reliable. This informant told me that Mr. Snodgrass was a pusher, selling marijuana, heroin, and pills, the dangerous drugs.

"That he had just recently received a shipment, within the past week and a half, and he had enough sufficient quantity of marijuana and pills to last him for his personal use for a year if he didn't sell any. That the informant had received marijuana cigarettes several times from Mr. Snodgrass and had done so in the past few days.

"And that Mr. Snodgrass always had the marijuana and dangerous drugs and narcotics with him wherever he went. If he was at the address on 37th Drive, the items will be in the mattress of his bed in a hole in the mattress. If he was in the car, when he left the house he would take the stuff and put it in the car with him, but he did keep the stuff with him all the time."

The Justice of the Peace issued a search warrant (for dangerous drugs, marijuana, LSD and heroin) which read:

"YOU ARE, THEREFORE COMMANDED . . . to make an immediate search of the person of Bernard Snodgrass & Linda Adkins and in the premises and building known or described as 1802 North 37 Drive, Phoenix, in the said County of Maricopa, State of Arizona, including all rooms and buildings used in connection with said premises and buildings, and adjoining the same; and in a motor vehicle or trailer described as an Early Model Blue Sports Car. . . ."

Following the issuance of the search warrant, the officers drove out to 37th Drive and McDowell Road where they were met by some narcotics officers. They all then went to the named address and announced their purpose to Linda Adkins who let them in. They searched the house and found a hiding place for marijuana in a mattress which had been described by the informer. They found only two blue pills in the house. They then went outside and started searching an automobile that had pulled up in front of the house. One of the narcotics officers noticed a butt end of a marijuana cigarette on the seat of the car, which he showed to Officer McCracken. As they were searching this automobile with the trunk up, McCracken noticed a blue, early model foreign sports car coming down the street. The sports car came to within two-thirds of a block of the house, made a u-turn and raced away from the house. McCracken personally knew defendant, but could not identify the driver at that moment. He felt it was the blue sports car they were looking for, and because of the action of the vehicle the officers got into their car and undertook to catch up with the sports car. By going down another street, they caught up with the car at 37th Ave. &

McDowell Rd. at which time McCracken recognized that defendant was driving the car. They then again caught up with the car in the 3500 block of W. McDowell Road and undertook to stop it. Defendant turned into the parking lot of the market at 35th Avenue and the intersection of McDowell Road. As he stopped, McCracken jumped out of the police car, tapped on the sports car, announced that he was Officer McCracken and asked the defendant to get out of the car. As defendant stepped out of the car he was told that they had a search warrant and had just finished searching the house, and that they also wanted to search the car. The officers found the marijuana (sufficient for 400 cigarettes) which was in a brown paper bag in a storage compartment behind the rear seat. Appellant was arrested and given the "Miranda" warnings. A further search was made and a bottle of pills (not admitted into evidence) was found. At this point defendant called out, "Leave her out of it, put it all on me. She has been good to me while I have been staying there."

At the motion to suppress hearing, McCracken gave the following testimony:

"Q  What was the description of the car that you were furnished?

"A  The car that Mr. Snodgrass used was a blue foreign sports car.

"Q  When was it that you had your conversation with the informant?

"A  The last conversation was in the morning of January 21st.

"Q  The same day that you obtained the search warrant?

"A  Yes, sir.

"Q  Now, when you talked to the Justice of the Peace, do you recall what you told him regarding the information that you had?

"A  Yes, sir.  I explained to him that the informant was reliable, that I had used him, the informant, on two occasions recently which proved to be good, which led to arrest and also

I told him that Mr. Snodgrass was said—The informant told me that Mr. Snodgrass was a pusher and had this marijuana and narcotics with him all the time.

"I don't recall any—There was about a five minute conversation with the Judge at that time, and I don't recall the rest of the conversation."

We first discuss the matter as to whether the search warrant was invalid as not complying with the requisites of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The requisites of Aguilar are that the magistrate must be informed of some of the underlying circumstances relied upon by the person providing the information and some of the underlying circumstances from which the affiant concluded that the information was credible and reliable.

A reading of the affidavit and other evidence before the magistrate shows the underlying circumstances relied upon. Of particular significance to the issue of defendant's warrantless arrest, which will be discussed later, is the fact that the marijuana would be either with the defendant at the house or with him in the car, as the defendant would have the narcotics with him wherever he went. The facts presented to the magistrate also showed the underlying circumstances from which the officer could well conclude that the informant was credible and reliable. The facts were also current as to the time defendant would be in possession of the narcotics. Defendant has not raised any other question regarding the warrant except as to the lack of specificity in describing the car. The insufficiency of description as to the car would not render invalid the search as to the house and person, which search revealed facts corroborative of the informant's information. In State v. Kelly, 99 Ariz. 136, 407 P.2d 95 (1965), our Supreme Court passed upon many of the same questions involving a warrant issued to search a described house and a certain "Fiat"

automobile, no mention being made of the insufficiency of the car's description.

█ At the motion to suppress hearing, and later during the trial, defendant contended the search was illegal on the grounds that the description of the car was not sufficiently specific. The trial court ruled that in spite of this defect the motion to suppress should be denied because the officer had probable cause to arrest the defendant for possession of narcotics. In other words, the basis was probable cause for a warrantless arrest for possession of narcotics. We agree with this ruling.

We deem it unnecessary to pass upon the sufficiency of the description of the car at this point. Irrespective of the lack of specificity of description, by taking all of the facts up to the time of the search, we find of record, as did the trial court, probable cause for the search. The automobile which fitted the description in the warrant was described as being associated with (not owned by) the defendant. The car was seen driving up to the house which was included in the warrant. It acted suspicously in making a u-turn and then fleeing from the area. Officer Mc-Cracken, having presented the affidavit, was in possession of the facts it contained and also had a personal acquaintance with defendant. When he and the officers were pursuing the car he recognized defendant who was driving it. McCracken had received information from a source proven reliable in the past that defendant at that time would have in his possession certain narcotics, including marijuana; that defendant had enough marijuana and other drugs to last him one year for his personal use. He also knew that his informant had received marijuana from defendant in the past few days. Added to this was the fact of the finding of a butt of a marijuana cigarette in an automobile which was searched on the premises; also the fact of finding the hole in the mattress just as it was described by the informant; and the fact that whenever defendant left the house he would take the marijuana and put it in the car with him.

Under all these facts, we believe the officers had probable cause to believe that defendant was in the commission of a felony involving the possession of narcotics. When Officer McCracken tapped on the car and asked defendant to get out he was, at that point, conducting a warrantless arrest. This arrest was based upon the very recent information given to him by the informant. The facts were developing just as the informant had related them to him. He had been informed that the defendant had the marijuana (and other drugs) with him wherever he went. If defendant was at the house the "items" would be in a hole in the mattress. If he was in the car he would take the "stuff" and put it in the car with him.

For a warrantless search and arrest case involving use of facts from a reliable informant, see State v. Aikins, 17 Ariz.App. 328, 497 P.2d 835 (1972). Helpful on the rule that the reasonableness of any particular search and seizure must be assessed in light of the particular circumstances against the standard of whether a man of reasonable caution is warranted in believing that the action taken was appropriate, and on the admissibility of such evidence uncovered by a search and seizure, see Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1967). Also, for a recent case involving reasonableness of an officer in stopping a person and then having probable cause to arrest, see State v. Ruiz, 19 Ariz.App. 84, 504 P.2d 1307 (1973).

To summarize, a search of the house minutes before reveals the empty hole in the mattress. Suddenly a blue sports car appears on the scene and abruptly makes a u-turn before it gets to the house, and then leaves the vicinity. Officer McCracken and the others who have information of defendant's criminal activity take pursuit. McCracken, who is acquainted with defendant, recognizes him driving the car,

whereupon he undertakes to stop defendant for the search and arrest.

■ Pertinent herein is a statement of law found in the possession of narcotics case of People v. Torres, 56 Cal.2d 864, 17 Cal.Rptr. 495, 496, 366 P.2d 823 (1961):

"A search without a warrant is proper where it is incident to a lawful arrest based on reasonable cause to believe that the accused has committed a felony. Such a search is not rendered unlawful merely because it precedes rather than follows the arrest. [citations omitted]. Reasonable or probable cause is shown if a man of ordinary care and prudence would be led to believe and conscientiously entertain an honest and strong suspicion that the accused is guilty. The test is not whether the facts on which the officer relies are sufficient to convict, but only whether the person should stand trial. [citations omitted]." 366 P.2d at pp. 824, 825

Having determined that a warrantless search in this case was constitutionally permissible, it is not necessary to pass upon the question created because of the description of the car.

We now deal with the remaining assignment of error which relates principally to the question of knowledge.

■■ In order to support a conviction for unlawful possession, the State must establish that the accused had knowledge of the presence of the marijuana, as well as that the marijuana was in his dominion and control. State v. Hunt, 91 Ariz. 149, 370 P.2d 642 (1962); State v. Harris, 9 Ariz.App. 288, 451 P.2d 646 (1969). The admissibility, therefore, of defendant's statement to the effect "put it all on me" then becomes crucial on the question of knowledge. This bit of evidence was relied upon as showing knowledge on the part of defendant. The prosecution also relied upon the suspicious actions of the defendant in making a u-turn and fleeing when noticing another car by the house being searched. These, together with the hidden nature of the marijuana in the sports car, are relied upon as bringing the case within the rule in State v. Harris, supra.

The trial court admitted into evidence defendant's statement at the time the pills were found in the car to the effect, "put it all on me, leave her out of it." This statement was made after defendant had been told he was under arrest for possession of marijuana and given the "Miranda" warnings. It was a voluntary statement and not the result of interrogation.

■ Defendant contends the statement was inadmissible in that it was tainted by the illegality of the search and was therefore in violation of the Fourth Amendment to the United States Constitution. Inasmuch as we have ruled that the search of the car was a legal, warrantless search, we need not further discuss the question other than to say that we do not find the statement tainted as contended.

The trial court, when ruling upon defendant's objection to the statement, permitted the prosecution to have the officer testify only to the statement, without reference to the pills. Defendant contends that this required him to take the stand to explain that his statement referred only to the pills and was thereby prejudiced.

In order to better understand the court's ruling, it is necessary to show the sequence of events. The court had ruled that the pills which were found during the search of the house were not admissible. When the offending statement was sought to be admitted there was a hearing in chambers regarding the matter. Officer Cons testified that after finding the marijuana and arresting the defendant they further searched the car. The evidence at that point was as follows:

"A . . . We then continued the search of the vehicle, and upon finding the first bottle of pills, I made a remark to Officer Maskell, I said, these are just like the ones we found at the house. At this time the Defendant who was sitting

in the back of the patrol car yelled something to the effect,—

"MR. BENNETT: Excuse me, Officer. We want just what he yelled, not to the effect.

"THE WITNESS: I don't remember the exact words.

"THE COURT: Your best recollection is all.

"THE WITNESS: 'Leave her out of it, put it all on me. She has been good to me while I been staying there.'"

The prosecution urged that by the words "put it *all* on me" defendant is including in this an admission of guilt as to the possession of marijuana irrespective of the fact that it also may refer to the pills. The court ruled that if the State could just put the bare statement in without the officer laying the background about the pills, he would let it in. The court stated that the full account involving the lady and the pills bothered him, as the jury might believe defendant was "shacking up" with the person, and also that since defendant was charged only with marijuana it might inject another crime involving a dangerous drug. The court mentioned to counsel for defendant, however, that it was up to counsel if he cross-examined the officer in such a way as to inject the pills into the case. It is to be noted that defendant did take the stand and gave his version of what was said which was to the effect that he was referring to the pills.

 Incriminating statements are admissible. The fact that defendant would deny making the statement in the manner stated, or that he meant something else by it, would not affect its admissibility. In this instance defendant took the stand and gave his version, and in doing so may have had to inject the lady and the pills into the case. The fact that he felt compelled to do so in explanation of the evidence offered did not render it inadmissible in the first instance. How the jury viewed the evidence is not known; we were unable to see that the jury was ever told the contents of the pills or that they were narcotic drugs.

Although this case presented some difficult decisions for the trial judge, we believe he followed a correct course. We find no prejudicial error.

Affirmed.

STEVENS, J., and LLOYD FERNANDEZ, Greenlee County Superior Court Judge, concur.

NOTE: The Hon. WILLIBY E. CASE, JR., was a member of this Court at the time of the scheduled argument. He requested that he be relieved from consideration of this case and the Hon. LLOYD FERNANDEZ, a Judge of the Superior Court, was called to sit in his stead.