547 P.2d 1055
**The STATE of Arizona, Appellee,**

v.

**Robert Edward BAKER, Jr., Appellant.**

**No. 2 CA–CR 635.**

Court of Appeals of Arizona,
Division 2.

March 30, 1976.
Rehearing Denied May 4, 1976.
Review Denied June 2, 1976.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer, III, and Ronald L. Crismon, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender by Henry W. Russell and Donald J. Natoli, Jr., Asst. Public Defenders, Tucson, for appellant.

## OPINION.

KRUCKER, Judge.

This was a criminal prosecution for two counts of armed kidnapping and one count of committing a lewd and lascivious act in an unnatural manner. After a pretrial hearing, the court denied appellant's motion to suppress a tear gas gun seized pursuant to a warrantless search of his car on March 22, 1974. At appellant's first trial the jury was unable to agree on a verdict and the court declared a mistrial. At his second trial, appellant was convicted on all counts. He was placed on ten years' probation for the armed kidnapping conviction and five years' probation for the lewd and lascivious conviction, the periods to run concurrently.

Appellant has now perfected this appeal. He contends (1) the trial court erred in denying his motion to suppress the gun seized from his car; (2) A.R.S. § 13–652 (lewd and lascivious conduct) is unconstitutional because it is vague, overbroad, infringes the right of privacy and violates the right to freedom of expression; (3) the trial court erred in denying his motions for directed verdict and new trial because the evidence was insufficient to warrant a conviction; and (4) the trial court erred in failing to declare a mistrial because of a prejudicial statement made by a prosecution witness.

Early in the morning of March 12, 1974, the victim and her common-law husband were driving home with their infant son after visiting friends. At the intersection of Grant and Tyndall their car ran out of gas and they pulled into a parking lot. Because their child was ill, the victim determined to hitchhike home with him rather than wait for a tow truck. At that moment, a man, allegedly appellant, pulled up in his car and offered to drive the victim and her child home. The victim accepted.

They arrived at the victim's home. As the victim started to open the car door, the man drew a gun and ordered her to stay. He drove the car around the block, stopped, and forced the victim to perform fellatio on him. Afterwards, he drove back to the victim's home and permitted her to leave with her child.

The victim later described her assailant to the police and assisted in making a composite drawing of him. She and her common-law husband, who was an auto

mechanic, described the car as a tan, 1963 Chevrolet with a crumpled right front fender and no tail lights.

On March 22, 1974, Officer Olson of the Tucson Police Department, who had recently read a police bulletin on the armed kidnapping, noticed appellant standing next to a 1964 Chevrolet at the intersection of Grant and Stone. The hood was raised and the car was protruding into the street. Another motorist had stopped in front of appellant's car to render assistance, and appellant was standing to the left of it holding jump cables. Officer Olson recognized appellant as someone he had stopped twice before for faulty equipment, and also noted that appellant and his car seemed to fit the description he had seen in the police bulletin. He radioed for Officer Jennings, who had taken the original report from the victim, and then got out to speak with appellant.

Officer Olson requested identification and asked appellant if he had ever fixed his tail lights. Appellant said he had not. Because Officer Olson knew from the police bulletin that the assailant had used a gun, he patted appellant down. He found no weapons. After reading appellant his *Miranda* rights, Officer Olson asked him to step off the road and speak to Officer Jennings, who had just arrived. At the hearing on the motion to suppress, Officer Olson testified:

" . . . then while Officer Jennings was talking to Mr. Baker, I decided to search the driver's seat area of his vehicle for any weapons.

Q. At this point, had Mr. Baker been placed under arrest?

A. No, not at all.

Q. And did you search the driver's seat area of the vehicle?

A. Yes, I did.

Q. Did you find anything at that location?

A. Yes, on the front seat, there is sort of like a serape type blanket. It ex-

tended for most of the portion of the front seat and then extended past the driver's side and on down into the floor area between the door and the seat. And underneath that blanket, I uncovered a .22 calibre tear gas gun and about a six inch long hunting knife."

Officer Olson then took the gun back to where Officer Jennings was questioning appellant and told him he was under arrest for carrying concealed weapons.

Officer Olson admitted at the suppression hearing that the police bulletin he had seen mentioned nothing concerning the presence of a gun in the suspected assailant's vehicle. He also stated that no search warrant had been obtained and that the car door was closed when he started to search. According to his testimony, he first searched under the driver's seat and then under the serape about halfway over toward the passenger's side. After appellant had been arrested for carrying concealed weapons, Officer Olson also searched the glove compartment.

█ In a 3–2 decision, our Supreme Court recently held that A.R.S. § 13–652, which prohibits the commission of lewd and lascivious acts in an unnatural manner, is constitutional. *State v. Bateman* and *Callaway,* filed March 10, 1976, 113 Ariz. 107, 547 P.2d 6. The appellants in *Bateman* and *Callaway* raised all the arguments made in the case at bench and the Supreme Court rejected each and every one. We are bound by the Supreme Court decision and must therefore sustain A.R.S. § 13–652 against appellant's challenge.

█ Before the trial appellant's counsel made a timely motion to suppress. After a hearing the trial court denied it. Later, at the trial, appellant's counsel stated he had "no objection" when the prosecutor offered the tear gas gun into evidence. Appellee now contends that appellant thereby waived any claim of error in the refusal to grant his motion to suppress. We reject that contention.

As the court stated in *State v. Michaels,* 60 Wash.2d 638, 374 P.2d 989 (1962):

"In this case . . . the trial court had all the facts before it when the pretrial [suppression] motions were made, and the ruling which it made on the last of them [a denial] was final in its terms. To have objected to the introduction of the evidence after this definitive ruling would have been a useless act, and this the law does not require. We find in the record of this case no evidence of a waiver of the objection." 374 P.2d at 990.

Appellant's counsel sufficiently preserved the issue for appeal by formally moving to suppress the gun and then following through with the suppression hearing. We will not require defense counsel to waste the trial court's time with futile objections to the introduction of evidence when a motion to suppress has already been made and denied. *Accord, Waldron v. United States,* 95 U.S.App.D.C. 66, 219 F.2d 37 (1955); *State v. Poe,* 74 Wash.2d 425, 445 P.2d 196 (1968); *State v. Michaels,* supra; *State v. Gibson,* 3 Wash.App. 596, 476 P.2d 727 (1970). *See Lawn v. United States,* 355 U.S. 339, 78 S.Ct. 311, 2 L.Ed. 2d 321 (1958) (recognizing rule in dictum). *Cf.,* Rule 16.1(d), Rules of Criminal Procedure, 17 A.R.S.

[4–7] Although appellant adequately preserved the suppression issue for appeal, we conclude that there was no error in denying the motion. Even though no formal arrest had taken place at the time of the search, the search can legitimately be viewed as incident to an arrest. Under *State v. Carroll,* 111 Ariz. 216, 526 P.2d 1238 (1974) and *State v. Snodgrass,* 19 Ariz.App. 391, 507 P.2d 1003 (1973) such a search is not rendered unlawful merely because it preceded rather than followed the arrest. As the court stated in *Carroll:*

" . . . if an officer has sufficient information from which he could make an arrest as an incident to that arrest he could make a lawful search, it is not unreasonable if the officer makes the search before instead of after the arrest. *People v. Simon,* 45 Cal.2d 645, 290 P.2d 531 (1955). . . . The important factors are whether the officer had probable cause before the search to make an arrest and whether the search was more extensive than would be justified as incident to an arrest. *People v. Simon,* supra." 111 Ariz. at 219, 526 P.2d at 1241.

Here, because appellant and his car answered the police bulletin's description of the armed kidnapping suspect, the officers had probable cause to arrest him.

We note that under our Supreme Court's recent decision in *State v. Noles,* 113 Ariz. 78, 546 P.2d 814 filed February 19, 1976, a search is within the scope permitted by *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) if the area searched was within the defendant's immediate control at the time of the arrest or if the defendant would have had easy access to the area searched had he been able to break free of restraint. This is apparently so even where, at the time of the search, the defendant is being restrained by armed police officers some distance away from the area of the search. In the case at bench there is no question that appellant could easily have broken away from Officer Jennings, run to his car, and grabbed the knife or the tear gas gun. We therefore hold that the search was sustainable as incident to arrest.

██ Appellant next contends the trial court erred in denying his motions for directed verdict and new trial because the evidence was insufficient to warrant a conviction. In support of this contention, appellant points to various inconsistencies in the evidence. The points raised by appellant merely go to the weight of the testimony, and the credibility of the witnesses is for the jury to determine. *State v. Christopher,* 10 Ariz.App. 169, 457 P.2d 356 (1969). The victim identified appellant as her assailant and the jury apparently chose to believe her. We think there was substantial evidence that appellant

committed the crimes with which he was charged, *State v. Holliday*, 92 Ariz. 168, 375 P.2d 370 (1962), and the trial court did not err in denying his motions for directed verdict and new trial.

On cross-examination, police Sgt. Carl Kishman stated that during a search of appellant's home, he paused to phone appellant's attorney. Appellant contends this created in the minds of the jury an inference that appellant was guilty and had something to hide. He also contends it was tantamount to a comment on appellant's right to remain silent. We disagree with all these contentions. Appellant does not suggest how the witness' comment could have unfairly prejudiced him in the eyes of the jury, and we believe it did not. Further, we cannot construe the witness' statement as anything close to a comment an appellant's silence, particularly since appellant testified in his own behalf.

Affirmed.

HATHAWAY, J., concurs.

HOWARD, Chief Judge (specially concurring).

I concur in this decision only because I am bound to do so as a judge of an intermediate appellate court. It is my opinion, however, that the majority opinion, insofar as it is applicable to the lewd and lascivious statute is incorrect in both law and logic.[1] A.R.S. Sec. 13–652 prohibits any lewd or lascivious act which is committed in an "unnatural manner".

In the case of *State v. Valdez*, 23 Ariz. App. 518, 534 P.2d 449 (1975) I discussed the statute and the Arizona decisions therein and opined that in view of the case of *Jellum v. Cupp*, 475 F.2d 829 (9th Cir. 1973), there was a serious question as to the constitutionality of our statute. The majority in *Bateman* and *Callaway* make no mention of the Ninth Circuit case. A reading of *Jellum v. Cupp*, supra, will reveal that there is more than a "serious question". There is no doubt that our statute is, in fact, unconstitutional.

I do not believe that the case of *State v. Mortimer*, 105 Ariz. 472, 467 P.2d 60 (1970) can be relied upon as a constitutionally acceptable definition of the words "unnatural manner". There the court stated that sexuality for purposes other than having children is "unnatural". What does this mean? If one has sexual intercourse with his pregnant wife is he engaging in a lewd and lascivious act since it is not for the purpose of having children? If the male withdraws before ejaculation is the act therefore lewd and lascivious? Is all foreplay prior to actual intercourse condemned and, if not what conduct in foreplay is condemned and what conduct is acceptable? The definition suggested in *Mortimer* is vague, overbroad, and cannot pass constitutional muster.

The majority opinion in *Bateman* and *Callaway*, recognized that the United States Supreme Court in *Eisenstadt v. Baird*, 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) and *Griswold v. State of Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) upheld the right of privacy in sexual relations, whether the parties are single or married, but came to the illogical conclusion that this right does not exist when the legislature has declared the acts to be unlawful, stating:

" . . . The legislature has thus made certain sexual behavior criminal by its power to regulate the health, morals and welfare of its people. This type of activity has not been discussed by the United States Supreme Court. We therefore hold that sexual activity between two consenting adults in private is not a matter of concern for the State except insofar as the legislature has acted to properly regulate the moral welfare of its people, and has specifically prohibited sodomy and other specified[2] lewd and lascivious acts."

---

1. The sodomy statute is not at issue in this case.

2. Acts done in an unnatural manner.

If one were to apply the foregoing reasoning to *Griswold* and *Eisenstadt* one would be compelled to uphold the statutes involved in those cases since the legislature had declared the conduct to be unlawful. I cannot agree with such reasoning.