549 P.2d 616

STATE of Arizona, Appellee,

v.

Benjamin Joe ARMIJO, Appellant.

No. I CA–CR 1412.

Court of Appeals of Arizona,
Division 1,
Department C.

May 18, 1976.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III, and Shirley H. Frondorf, Asst. Attys. Gen., Phoenix, for appellee.

H. K. Wilhelmsen, Prescott, for appellant.

## OPINION

NELSON, Judge.

After a trial to the court, on the basis of stipulated evidence, appellant was found guilty of grand theft and sentenced to a term of four to eight years in the State Prison. On appeal, he raises two issues. First, whether there was probable cause for the police to search appellant's vehicle. Second, whether a pretrial showup of appellant was unduly suggestive.

At approximately 4:30 p. m. on February 17, 1975, two men and a woman entered a store in Seligman. The two clerks in the store waited on the woman and the two men went over to a showcase containing Indian jewelry. The men left the store with the woman. After the group left, the workers noticed that an Indian watchband and squash blossom necklace were missing.

The workers called the police. On the basis of the information given to the police, a broadcast was put out informing the officers on patrol that a squash blossom necklace and a watchband had been stolen from the store in Seligman. It also stated that the suspects were driving a maroon 1967 or 1968 model car and it was heading westbound on U.S. Highway No. 66. The broadcast further stated that there were three suspects of Mexican descent, two men and a woman, in the car. At approximately 5:30 p. m., Officer Freye of the Arizona Department of Public Safety saw a vehicle matching this description near milepost 82. Milepost 82 is approximately 52 miles from Seligman. He saw two males and one female in the vehicle. He stopped the vehicle and discovered that there were actually four people in it.

Officer Freye asked the suspects if they had stopped in Seligman. The suspects replied they had not, but had stopped in Gallup, New Mexico for gas. Gallup is 350 miles from the location where the police officer stopped the suspects and the vehicle's gas gauge indicated that it was still one quarter of a tank full. The occupants of the car matched the descriptions of the suspects. The police also discovered that two of the suspects were wearing dark sports coats which the thieves were described as wearing.

The police then searched the automobile and found a turquoise and silver watchband. The police officers placed the suspects under arrest and drove them to Kingman.[1]

■ Appellant claims that the police did not have probable cause to search the car and that the evidence discovered during the search should have been suppressed. The contention is without merit. The police officers knew that a theft had taken place. The vehicle and its occupants fit the description of the suspected thieves, and the vehicle was in a location consistent with the direction and speed the getaway car was traveling. In light of these facts, the police had probable cause to arrest appellant and search the vehicle. *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970); *State v. Baker*, 26 Ariz.App. 255, 547 P.2d 1055 (1976); *State v. Vaughn*, 12 Ariz.App. 442, 471 P.2d 744 (1970).

Appellant's second contention on appeal is that a pretrial showup of appellant to two witnesses was unduly suggestive and the Court should have granted appellant's motion to suppress the proposed in-court identification.

After the four suspects were arrested, they were taken to Kingman. The police brought the two witnesses to Kingman to identify the suspects. Enroute, the police stopped to allow the witnesses to identify

---

1. The squash blossom necklace was subsequently found in the police car used to transport the suspects to Kingman.

the vehicle and told the witnesses that they had found a watchband in the car. At approximately 8:30 p. m., the witnesses viewed the four suspects (who were together in a detention area) through a small window in the police station. The witnesses were able to identify appellant and the female suspect, but were unable to identify the other two suspects.

■ Preliminarily, there are several difficulties with the procedure followed in the current case. First, because of the display of the automobile to the witnesses and the description of the watchband, it is clear that the witnesses assumed that the police had the suspects in custody and that they were going to Kingman to identify them. Because they viewed the suspects in a separate room, we feel this is similar to a "one man showup" with its attendant hazards of misidentification. See Grano, "Kirby, Biggers and Ash: Do Any Constitutional Safeguards Remain Against the Danger of Convicting The Innocent?" 72 Mich.L.Rev. 717, 731–742 (1974). Although one man showups are permissible in Arizona (see *State v. Daniels*, 106 Ariz. 224, 474 P.2d 815 (1970)), the procedure is justified by the need for the police to be able to resume the search for fleeing culprits while the trail is fresh. *Daniels*, supra; *Bates v. United States*, 132 U.S.App.D.C. 36, 405 F.2d 1104, 1106 (1968).

In this case, the witnesses were not shown the suspects until approximately four hours after the crime and three hours after the suspects' arrests. Further, the police had found the stolen watchband in the vehicle and the witnesses had identified the vehicle. Therefore there was no need for a speedy identification of the criminals and the rationale behind permitting a one man showup is not present.

In addition, both witnesses were together when they viewed the suspects, which could have the effect of reinforcing one another's identification. This procedure could lead to a tentative identification by one witness becoming positive because the other witness made a positive identification.

However, the witnesses were not told that the four people they saw in the room were the suspects. In fact, one witness testified that "we didn't know how many people they were going to show us", and they did not know that the four people they viewed were from the car. Further, one of the witnesses testified that she could identify appellant based solely on the observation at the time of the crime and seeing him in custody did not affect her in-court identification.

■ Although the latter facts make the procedure followed less objectionable, we feel that the procedure followed in the current case was not proper. However, every identification procedure which falls short of the ideal does not make subsequent in-court identification inadmissible. *State v. Lee*, 110 Ariz. 357, 519 P.2d 56 (1974). In three cases in which a one man showup or similar type procedure was challenged, our Supreme Court applied the *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) test to determine whether both the pretrial identification and the subsequent in-court identification were admissible[2]. *State v. Williams*, 113 Ariz. 14, 545 P.2d 938 (1976); *State v. Milonich*, 111 Ariz. 442, 532 P.2d 504 (1975); *State*

2. There is authority that the *Neil* test should not be applied to the pre-trial identification (as compared to the in-court identification) in post-*Stovall v. Denno*, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) cases. *Brathwaite v. Manson*, 527 F.2d 363 (2nd Cir. 1975). The Supreme Court of the United States, however, granted certiorari in this case on May 3, 1976, —— U.S. ——, 96 S.Ct. 1737, 47 L.Ed.2d 202, *Manson v. Brathwaite*. Although the courts have not always clearly distinguished between the pretrial identification and the in-court identification and the appropriate tests to be applied, we feel that the use of the *Neil* test by our Supreme Court is the correct one and is, in any event, binding upon this Court.

*v. Taylor*, 109 Ariz. 518, 514 P.2d 439 (1973). In *Neil*, the Court stated:

"[T]he factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." *Neil v. Biggers*, supra, 409 U.S. at 199, 93 S.Ct. at 382, 34 L.Ed.2d at 411.

 In this case, both witnesses had an opportunity to view appellant in a well lighted store for a period of ten to fifteen minutes. Although one witness stated that she did not pay much attention to appellant after seeing him initially, she had the opportunity to view him at the distance of only 15 feet. The other witness testified that she looked at appellant "a couple of times" because she wondered what he was doing by the counter. While they were in the store, only one other customer came into the store and therefore the suspects would receive more attention by the witnesses than under other circumstances. Although neither witness described appellant in detail, the description was accurate. Further both witnesses identified appellant positively at the out-of-court confrontation. In addition, only four hours elapsed between the crime and the confrontation. Finally, the discovery of the watchband in appellant's car and the necklace in the police car leaves no doubt that the occupants of the car were in the store. *United States ex rel. Phipps v. Follette*, 428 F.2d 912 (2nd Cir. 1970), cert. denied, 400 U.S. 908, 91 S.Ct. 151, 27 L.Ed.2d 146 (1970). Weighing these factors, we conclude that the out-of-court identification was reliable.

As to the proposed in-court identification, we feel the foregoing facts also show by clear and convincing evidence that the proposed in-court identification was not tainted by any irregularity in the prior identification. *State v. Dessureault*, 104 Ariz. 380, 453 P.2d 951 (1969); *State v. Miranda*, 109 Ariz. 337, 509 P.2d 607 (1973).

In light of the foregoing, we feel that there are sufficient facts to support the trial court's determination of admissibility in the current case.

Judgment and sentence affirmed.

HAIRE, C. J., and EUBANK, P. J., concur.