566 P.2d 1031

STATE of Arizona, Appellee,

v.

Robert SCHREIBER, aka Eric Robert Schreiber, Appellant.

No. 3362.

Supreme Court of Arizona,
In Banc.

June 6, 1977.

Bruce E. Babbitt, Atty. Gen., by William J. Schafer III and Shirley H. Frondorf, Asst. Attys. Gen., Phoenix, for appellee.

John M. Neis, Pima County Public Defender by Kenneth J. Peasley, Asst. Public Defender, Tucson, John T. Poore, Certified Third-Year Law Student, University of Arizona, for appellant.

HOLOHAN, Justice.

The appellant, Robert Schreiber, was tried and convicted by a jury of first-degree murder and armed robbery on October 3, 1975. Appellant's motion for a new trial was denied and on October 30, 1975, he was sentenced to two consecutive life sentences in the Arizona State Prison. Prior to pronouncing the life sentences the trial judge ruled that the jury had been unlawfully constituted for the purpose of imposing the death penalty under A.R.S. § 13–453 because neither the state nor the appellant had been allowed the ten peremptory jury challenges required in death penalty cases

by 17 A.R.S. Arizona Rules of Criminal Procedure, rule 18.4(c)(1)(i). The trial court also ruled that a sentencing hearing pursuant to A.R.S. § 13–454 was inappropriate since the imposition of the death penalty had been ruled inapplicable. Appellant filed a timely appeal from his conviction and sentence.

On April 30, 1976, appellant filed a Petition for Post-Conviction Relief in accordance with 17 A.R.S. Rules of Criminal Procedure, rules 32.1(a) and (e). This court granted a stay of appellant's appeal pending a final decision on his Rule 32 petition. Appellant's Petition for Post-Conviction Relief was denied on June 1, 1976, and his motion for rehearing was denied on June 15, 1976. Pursuant to 17 A.R.S. Rules of Criminal Procedure, rule 32.9(c), appellant filed a Petition for Review of the denial of his Rule 32 petition. Appellant's Petition for Review and the appeal of his conviction are consolidated by authority of 17 A.R.S. Rules of Criminal Procedure, rule 31.4(b)(2).

█ Appellant has raised several issues for our consideration. That issue which is set forth in the Petition for Review is determinative of this case:

Did the prosecuting attorney's failure to disclose the existence of an official accident report deny appellant a fair trial?

We believe that nondisclosure of the report constituted reversible error. The trial court should have granted appellant's Rule 32 petition. We need not decide the remaining issues because there was either no error in this instance or there will not be a reoccurrence on retrial.

Appellant was arrested by officers of the Pima County Sheriff's Department for the murder of Richard Michael Boss at approximately 6:30 p. m. on June 17, 1975. A few minutes prior to the arrest the officers had found the victim buried, with the exception of his right arm, in a shallow garbage pit at a makeshift camping area frequented by transients. The camp was known as Checkpoint 1 and was located north of Gates Pass Road a few miles west of Tucson, Arizona. Mr. Boss was alive when first found but died of severe head injuries two hours later

at a Tucson hospital. At the time of his arrest a short distance from the burial site, appellant was in possession of a pair of Levi's, a pair of boots, a set of keys and currency totaling $130.45. It was later established that the boots belonged to the victim and that the keys fit the victim's van truck parked at the scene of the crime. After his arrest and while still at the scene appellant led officers to a box containing two handguns also belonging to the victim and which was located along the roadway leading to Checkpoint 1.

In his trial testimony appellant admitted that he had been present at the scene of the crime prior to his arrest and had seen the partially buried body of Mr. Boss. Appellant testified that he met Mr. Boss at Checkpoint 1 in order to conclude a sale of some marijuana which appellant had stored in the desert. Prior to concluding the sale, appellant stated that two unidentified individuals entered the area. One of the individuals took the marijuana while the other argued and fought with the victim. Appellant testified that he was able to avoid being observed by the assailants when he hid in a nearby gully.

Appellant argues that he was denied a fair trial because the prosecuting attorney, Mr. Butler, failed to disclose evidence during the trial which could have corroborated a portion of appellant's testimony. It is also argued that the admission of such corroborating evidence bore directly upon the determination of appellant's guilt or innocence and that the prosecuting attorney's failure to disclose it was a violation of the due process principles enunciated in *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). We agree that appellant's Rule 32 petition should have been granted under 17 A.R.S. Rules of Criminal Procedure, rule 32.1(a). The prosecutor's nondisclosure of material evidence was a denial of appellant's right to due process of law. A.R.S.Const., Art. 2, § 4; U.S.Const. Amend. XIV.

Appellant testified that he had found ten packages of marijuana which had been thrown out of a car in the Gates Pass area near Checkpoint 1 on June 1, 1975. According to appellant's testimony he was led to the packages by a young man staying at Checkpoint 1 and who was known only to the appellant as Bob. Appellant stated that Bob was a hitchhiking passenger in a car which had run off Gates Pass Road on the evening of June 1, 1975. The car allegedly contained marijuana which was thrown into roadside gulches before the investigating police officers arrived. Appellant asserted that he was led to the marijuana on the morning of June 2, 1975, at which time he gathered the ten packages together and hid them in the desert. Later that same day appellant allegedly sold a portion of the marijuana for $650 and then checked into the Sahara Motel in Tucson for several days with a group of friends. Appellant offered no additional evidence to corroborate that portion of his testimony relating to the alleged car accident and to his subsequent acquisition of the marijuana.

On the final day of trial testimony Mr. Butler asked appellant several questions about the details of the accident described by appellant in his testimony. Appellant was also questioned about the quantity of marijuana he had found near the alleged accident and what amount he was prepared to sell to the victim. In his final argument to the jury Mr. Butler made the following statement:

"Now, this marijuana, Mr. Schreiber tells you, came from a car wreck on the 1st of June, somebody had a wreck and had ten kilos, and the owner had nothing to do with the marijuana. Just leaves it out there. And this Bob—I don't know who Bob is, Mr. Schreiber has subpoena power, he certainly knows Bob better than I. We didn't hear from Bob about how Bob found the marijuana and then told Mr. Schreiber, and he didn't even see any pictures of where the marijuana was first located.

"Mr. Schreiber had that information, if it is true, but you didn't hear that. The reason you didn't hear it is because it is not true. I submit there wasn't a car wreck, there wasn't any marijuana from the very beginning, but Mr. Schreiber tells you he sold some five keys to a guy named Gilbert . . . .."

The jury verdict was reached on October 3, 1975. At the sentencing hearing of October 30, 1975, it was revealed that Mr. Butler had been in possession of an official accident report of the Pima County Sheriff's Department when he had questioned appellant about the details of the accident which appellant alleged had occurred on June 1, 1975. That report indicated there had been a one-car accident on Gates Pass Road near Checkpoint 1 on the evening of June 2, 1975. The report also stated that the car had been driven by a young woman who was accompanied by one male passenger. There was no indication from the information found in the report that any marijuana had been confiscated by investigating authorities or that an additional hitchhiking passenger was also present. Mr. Butler acknowledged that his office had been in telephone contact with a male passenger listed in the accident report prior to the end of trial. The prosecutor's chief investigator informed the passenger that the latter's testimony would not be required because Mr. Butler had assured himself that the report did not pertain to the accident referred to by Mr. Schreiber. Only after talking to the passenger a few days before the sentencing hearing did Mr. Butler learn that marijuana had been discarded from the car involved in the June 2, 1975 accident and that a hitchhiker had also been riding in the car. At no time prior to Mr. Butler's revelations at the sentencing hearing had he disclosed the existence of the accident report to defense counsel.

At the evidentiary hearing held on appellant's Petition for Post-Conviction Relief, Mr. Butler stated that he had not disclosed the existence of the official accident report at the time of trial for two reasons. First, he believed that the reported accident and the one to which appellant referred in his testimony were not one and the same. Mr. Schreiber had stated that the accident oc-

curred on June 1, 1975, whereas the accident report was dated June 2, 1975. In addition to the discrepancy in dates the report had not contained any mention of marijuana or that a hitchhiker had been riding in the car involved. Second, Mr. Butler believed that defense counsel had knowledge of the report because of its easy availability and because defense counsel had been conducting a seemingly intense investigation of the case. It was Mr. Butler's belief that the defense counsel had not introduced the accident report because it would not aid in corroborating the defendant's testimony. The prosecutor stated that his views were strengthened by the fact that appellant had not called any witnesses to the stand who could have corroborated appellant's testimony regarding the occurrence of an accident wherein marijuana was discovered.

While we agree that counsel for the defense did not exercise due diligence in discovering the existence of an official accident report, we cannot say that its nondisclosure by the prosecuting attorney was harmless error in this case. This court has long held that the disclosure by the prosecuting attorney of evidence which may have a bearing upon the defendant's guilt or innocence is not dependent upon a request by the defense counsel, and we have embodied this principle in our present Rules of Criminal Procedure. 17 A.R.S. Rules of Criminal Procedure, rule 15.1; *State v. Altman,* 107 Ariz. 93, 482 P.2d 460 (1971); *State v. Fowler,* 101 Ariz. 561, 422 P.2d 125 (1967). In *State v. Fowler, supra,* we indicated that it is not within the prosecuting attorney's prerogative to make a unilateral determination of what evidence is admissible at trial or useful to the defense. Those questions can only be resolved by the court and defense counsel respectively. The fact that a more diligent defense counsel could have discovered the nondisclosed evidence is not controlling for as we stated in *Fowler:*

"While it may be true that other defense counsel might have learned about the finding of the knife [accident report in this case], this is too speculative a conclusion under the circumstances to be given precedence over an accused's right to a fair trial." 101 Ariz. at 564.

It is our opinion that the prosecuting attorney in this case should have revealed to the defense counsel the existence of the accident report prior to questioning the appellant.

In a recent decision relating to the disclosure requirements enunciated in *Brady v. Maryland, supra,* the federal Supreme Court set forth a standard for determining when evidence in the hands of the prosecutor is material enough to require disclosure to the defendant.

"The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt." *United States v. Agurs,* 427 U.S. 97, 112, 96 S.Ct. 2392, 2401, 49 L.Ed.2d 342, 354 (1976).

After reviewing the entire record, including the evidentiary hearing on appellant's Rule 32 petition which more thoroughly investigated the circumstances of the reported accident, we believe that a new trial as to all counts is required in this case. As is evident from the lengthy evidentiary hearing, the details of the accident were subject to considerable development and interpretation by opposing counsel once the report's existence was disclosed. Appellant was tried on charges of armed robbery in violation of A.R.S. §§ 13–641 and 13–643B, and first-degree murder in violation of A.R.S.

§ 13–452. The prosecutor sought conviction on three theories of first-degree murder: (1) premeditation; (2) felony-murder; and (3) murder by torture. Production of the report could have had a significant effect upon the jurors' finding of guilt on any or all of the charges. The report supported appellant's testimony that a one-car accident had occurred near Checkpoint 1, albeit a day later than appellant indicated. Only by reading the report could defense counsel have learned the identities of the driver and passenger involved in the accident. Thereafter, testimony by the driver and passenger would have shown that they were accompanied by a hitchhiker, that the passenger had thrown an undetermined amount of marijuana out of the wrecked vehicle and that the hitchhiker had also been in possession of at least a small quantity of marijuana of his own. This chain of interrelated evidence corroborated a substantial portion of appellant's testimony and also established that he may have been in possession of a salable quantity of marijuana prior to the time of the murder.

During the Rule 32 evidentiary hearing the prosecutor argued that defense counsel could have established the facts surrounding the accident by introducing testimony of other transients who were present at Checkpoint 1 on the evening of the accident. However, those prospective witnesses could not confirm that marijuana had been thrown from the car nor could they testify as to how much marijuana had been discarded. Only the accident report and subsequent development of its information could provide these details. As we have already noted, defense counsel alone could determine what use and development was to be made of the accident report. *State v. Fowler, supra.* It is the material character of the nondisclosed accident report which is controlling in this case and not the prosecutor's speculations as to how or if defense counsel would have used that report. *United States v. Agurs, supra; Brady v. Maryland, supra.*

The judgment of the trial court is reversed and the case is remanded for a new trial.

CAMERON, C. J., STRUCKMEYER, V. C. J., and GORDON, J., concur.

HAYS, Justice, dissenting.

I have no quarrel with the authorities cited by the majority opinion but I do question their application to the facts herein. In the closing days of the trial, the defendant took the stand. After some time on the witness stand, court was recessed until the next day. It was at this time the prosecutor sought an accident report. There was no such report for June 1, the date that defendant insisted the accident occurred. A further search for a report unearthed the June 2 report. This report contained no reference to the hitchhiker, so prominent in the defendant's testimony, nor was there reference to marijuana.

The defendant argues that the accident report contained information as to the driver and passenger who would be potential witnesses. However, other witnesses who supposedly could also corroborate the fact of the accident were never called. From all this, the prosecutor reasonably concluded that this report did not apply to the wreck described by the defendant or that the report, which was easily available to defendant's counsel, had been rejected for tactical reasons.

At the hearing on the Rule 32 motion, it became quite apparent that the two witnesses named in the accident report, if called at the trial, would have made a "liar" out of the defendant as to the amount of marijuana recovered at the scene of the accident. This was important to the defense. There had to be marijuana still available to support defendant's story of an attempted sale to the victim.

At this post-conviction hearing, trial defense counsel himself testified that he probably wouldn't have used the accident report witnesses if they had been available.

I do not find the failure to disclose the June 2 accident report to be a suppression of evidence "highly probative of innocence." *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).

In *United States v. Agurs, supra,* the Court said:

"The mere possibility that an item of undisclosed information might have helped the defense, or might have affected the outcome of the trial, does not establish 'materiality' in the constitutional sense." 96 S.Ct. at 2400.

I dissent.