577 P.2d 264

**STATE of Arizona, Petitioner,**

v.

**Christopher E. KELLY, Respondent.**

**No. 1 CA–CR 2658–PR.**

Court of Appeals of Arizona, Division 1, Department B.

Feb. 9, 1978.

Rehearing Denied March 24, 1978.

Review Denied April 18, 1978.

Charles F. Hyder, Maricopa County Atty., by John C. Lincoln, Deputy County Atty., Phoenix, for petitioner.

Thinnes & Rawles by Thomas A. Thinnes, Phoenix, for respondent.

## OPINION

EUBANK, Presiding Judge.

Respondent, Christopher E. Kelly, was convicted of one count of assault with a deadly weapon, and was sentenced on January 28, 1976, to an eight to twelve year term in prison. On May 11, 1976, respondent filed a petition for post-conviction relief alleging, among other things, the existence of newly discovered material evidence, and the failure of the prosecutor to disclose this evidence prior to trial. This newly discovered evidence was a witness, Dr. Kenneth Carpenter, who had treated the victim, Conrad Wagner, on the night of the assault. Following a response by the State and an evidentiary hearing, the trial court granted the petition for post-conviction relief, finding that Dr. Carpenter's testimony was essential to respondent's defense and that the failure of the State to disclose this information so prejudiced respondent that a new trial was required. The matter was brought to this Court for review by way of a timely motion for rehearing and petition for review.

Testimony at trial indicated that respondent and the victim had an altercation earlier in the evening before the assault occurred. Respondent had struck the victim's wife during an argument and the victim had struck respondent. The victim testified that approximately 15 to 20 minutes later he and a friend were approaching his van parked on the street near his home when respondent stepped out from in front of the van. Respondent displayed a gun and the victim started to say "you son-of—." Respondent then fired a shot, striking the victim as he was starting to turn and run. A second shot, which missed, was fired as he continued to turn and run. He ran behind the van and through a hedge when respondent fired a third shot, this one striking him in the arm and moving it forward. The victim testified that his back was turned toward respondent when the third shot was fired.

During the course of the victim's testimony the prosecutor, over objection, had him remove his shirt in front of the jury to display the wounds. He identified each of his wounds and testified that the first shot struck him in front of the left shoulder and exited behind the left shoulder. He then testified that the third shot, which inflicted his second wound, entered the middle of the back of his right arm. He thus reaffirmed his previous testimony that his back had been turned toward respondent when this shot was fired.

Respondent's theory at trial was self-defense. He testified that after the first altercation he went to a friend's house to clean up. He took a gun from his friend's dresser drawer and left to retrieve his truck which was parked near the victim's house. He walked down the middle of the street to avoid meeting the victim and came to the van. As he passed the van, he heard the victim yell in a loud and threatening voice, "Chris, you son-of-a-bitch." Respondent then saw him standing by the door of the van. The victim turned around and took a step toward him. Respondent dropped down into a crouch, aimed the gun at the victim and yelled, "stop". He stopped and respondent spotted an object in his hand which he thought could have been a knife, screwdriver or length of pipe. He brought the object up from his side and respondent shot at him twice. The victim rolled and took off for the rear of the van where he began to turn toward respondent. Respondent thought he was going to use the van for cover so he fired another two shots.

The petition for post-conviction relief alleged that Dr. Carpenter had treated the victim the night of the shooting and would testify that he had not determined from examining the wounds that night whether the shots entered the victim's body from the front or back. Respondent characterized Dr. Carpenter's testimony as crucial to the issue of self-defense, because while the victim had testified that he was running away when he was shot in the right arm, respondent had testified that he was turning toward him to use the van for cover. Respondent conceded that the doctor's testimony

did not demonstrate that the victim was shot from the front but argued that it did raise a "reasonable doubt as to whom [sic] was assaulting whom". The petition also alleged that someone from the county attorney's office had spoken with Dr. Carpenter before trial. Following the evidentiary hearing on June 24, 1976, the court found the following:

Dr. Carpenter testified at the evidentiary hearing that while he was not the primary physician for the victim, he did treat the victim's wounds and prepared the admission papers for him. Viewing Dr. Carpenter's testimony at the evidentiary hearing as it would probably have been given at trial, Dr. Carpenter would have testified that:

1. He did not determine whether the front wounds were entrance or exit wounds;

2. He could not recall whether he could or could not have determined whether these wounds were entrance or exit wounds;

3. He did not recall whether the bullet went straight through the wounds or not;

4. A view of the wounds to the jury would have shown the location of the wounds; and

5. A display of the wounds three months after the making thereof would not assist the jury in determining which were the entrance and which were the exit wounds.

Dr. Carpenter did talk to someone prior to the trial but recalls that he talked to only one person. John Lincoln, the deputy county attorney, did talk to a doctor at the County Hospital but made no notes or recording of the conversation and does not recall the name of the doctor. The Court concludes that John Lincoln talked to Dr. Carpenter prior to the trial. In his closing statement at the evidentiary hearing, the prosecutor stated that he did not reveal the conversation with Dr. Carpenter (and therefore did not reveal Dr. Carpenter) to the defendant because the thought never crossed his mind.

It is this Court's opinion that the probable testimony of Dr. Carpenter was essential information for the defendant to have to properly defend on the charges. Whether or not Dr. Carpenter was used as a witness by the defense would be probably a matter of trial strategy and his lack of use as a witness might intrude into the area of incompetence of counsel, but such is not a question to be determined by this Court at this time.

The question to be determined is whether the existance [sic] of Dr.·Carpenter and the information he would have given to the defense was so essential that the failure of the prosecutor to disclose this resulted in such prejudice to the defendant that a new trial is required. It is this Court's opinion that it was and does.

On the basis of these findings, the trial judge vacated judgment and sentence and granted appellee a ·new trial.

The rules for granting a new trial on the basis of nondisclosure are well stated in *State v. Wilder*, 22 Ariz.App. 541, 542–43, 529 P.2d 253, 254–55, cert. denied 423 U.S. 843, 96 S.Ct. 78, 46 L.Ed.2d 64 (1975) as follows:

> *Brady v̇. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), recognized a duty on the part of the prosecution to disclose, *upon request*, evidence favorable to the defendant. In *Giles v. Maryland*, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967), the court remanded a case for further proceedings where no defense demand had been made for examination of specific evidence in the prosecutor's possession. The court in *Giles* did not eliminate the requirement of a defense request for production but simply held that where suppression is deliberate or the nondisclosure shocks the conscience of the court, a defense request is not necessary.
>
> Before a new trial can be granted, the court must find that the undisclosed evidence is material. *Giglio v. United States*, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). The test of materiality is "whether the evidence might have

led the jury to entertain a reasonable doubt" about the defendant's guilt. *United States v. Davila-Nater*, 474 F.2d 270 (5th Cir. 1973); *Levin v. Clark*, 133 U.S.App.D.C. 6 at 9, 408 F.2d 1209 at 1212 (1967). Another test of "materiality" advocated by some courts is whether the nondisclosure prejudiced the defense. *Evans v. Janing*, 489 F.2d 470 (8th Cir. 1973); *Simos v. Gray*, 356 F.Supp. 265 (E.D.Wis.1973).

In the recent case of *State v. Schreiber*, 115 Ariz. 555, 566 P.2d 1031 (1977), our Supreme Court held that the prosecutor's failure to disclose an official state accident report which tended to corroborate substantial parts of the defendant's testimony constituted the nondisclosure of material evidence, and was therefore a denial of appellant's right to due process of law. In reaching this conclusion, the majority relied upon the recent United States Supreme Court opinion in *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). As our Court noted, *Agurs* adds an additional test to materiality: whether the omission of the evidence, evaluated in the context of the entire record, creates a reasonable doubt of the defendant's guilt that did not otherwise exist. "If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." (427 U.S. at 112–13, 96 S.Ct. at 2402, 49 L.Ed.2d at 355).

In .our opinion the necessity for a new trial present in *Schreiber* does not exist under the facts of this case. In *Schreiber*, corroborating evidence existed supporting, in part, the defendant's testimony, and due process of law required either disclosure of such evidence or a new trial. In the case *sub judice*, there is nothing in the trial court's finding that would create a reasonable doubt of the defendant's guilt that did not otherwise exist. Dr. Carpenter's testimony does not corroborate the respondent's version of the incident. Indeed, his testimony adds nothing to the evidence one way or the other. Even with his testimony, the jury would still be left to decide whether to believe the testimony of the respondent or

the victim. We hold, therefore, that the trial judge abused his discretion in awarding a new trial on the basis of nondisclosure under the facts of this case.

The order for new trial is reversed and the judgment of conviction and sentence of appellee are reinstated.

JACOBSON and WREN, JJ., concur.