636 P.2d 84

**STATE of Arizona, Appellee,**

v.

**James Lee MADDASION, Appellant.**

No. 5082.

Supreme Court of Arizona,
In Banc.

Oct. 6, 1981.
Rehearing Denied Nov. 17, 1981.

Robert K. Corbin, Atty. Gen., Phoenix by Bruce M. Ferg, Asst. Atty. Gen., Tucson, for appellee.

Harley D. Kurlander, Tucson, for appellant.

CAMERON, Justice.

Defendant, James Lee Maddasion, was convicted and adjudged guilty of unlawful sale of narcotics in violation of A.R.S. § 36–1002.02 and unlawful possession of narcotic drugs for sale in violation of A.R.S. § 36–1002.01 and sentenced to a prison term of not less than twenty years nor more than life. The case was appealed to the Arizona Court of Appeals, Division Two, and the judgment was affirmed. See *State v. Maddasion*, 24 Ariz.App. 492, 539 P.2d 966 (1975). It was later determined that the Court of Appeals was without jurisdiction in the matter. See A.R.S. §§ 12–120.-21(A)(1) and 13–4031 (formerly 13–1711); *State v. Canedo*, 125 Ariz. 197, 608 P.2d 774 (1980). We therefore granted defendant's petition for post-conviction relief and sanctioned a delayed appeal to this court.

There are two issues on appeal:

1. Whether the trial court erred in denying the motion to suppress evidence seized in the search of defendant's business; and

2. Whether a new trial should be granted because of the failure of the State to reveal to the defendant promises made to a key witness and informant for his help and testimony.

The facts necessary to a determination of these issues are as follows. Three hours after a police informer had purchased a usable amount of heroin from the defendant, Agent Steve Bunting of the Metropolitan Area Narcotics Squad obtained a telephonic search warrant pursuant to A.R.S. § 13–1444(C). The warrant authorized a search of the defendant's business at 4812 S. 12th Avenue, Tucson, Arizona, and the people on the business premises. Over the telephone, Agent Bunting read the warrant's description of the persons to be searched:

" * * * on the persons of JAMES MADDASON (sic) owner of JJ's Auto Sales. One female employee, a white female approximately forty years wearing a pink dress presently. One male employee wearing a blue shirt with the name of VICTOR, the subject is approximately fifty to sixty years old. One Mexican male age forty, wearing a straw hat at this time and one female in her thirties with black hair, presently wearing a white blouse with a blue design and a blue shirt. All the subjects are inside the res * * * inside the business at this time."

The warrant when issued read as follows: "on the person(s) of

James Maddasion

1—Female Employee (WF 40's Pink Dress)

1—Male Employee

1—Male At Address At Time of Crime

1—Female—M–F Wht Blouse w/Blue Skt Blk Hair 30's"

The warrant was executed and a search of the business uncovered five "rolls" of a substance later determined to be heroin. Next to the heroin was $980 in currency. The serial numbers of the currency matched those of the cash that had been given to the informer to carry out the sale. The defendant was arrested.

The testimony of the informer, Gus Hudson, was central to the State's case. He testified at trial that he had participated in the arrest in the hope that the authorities would allow his brother-in-law, John Higgins, to get help for his drug addiction.

John Higgins was, in fact, given probation on the condition that he enroll in a drug rehabilitation program.

From the judgment of guilt and the denial of his motion for new trial, defendant appeals.

## SUPPRESSION OF EVIDENCE SEIZED PURSUANT TO THE SEARCH WARRANT

The defendant urges that the trial court erred in denying his motion to suppress the heroin seized in the search of his business, J&J Auto Sales. He argues that at the time the warrant was issued there was no probable cause to believe that there was any heroin on the premises. We disagree. Our Court of Appeals has stated:

> "Probable cause exists where the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense had been or is being committed." State v. Brazil, 18 Ariz.App. 545, 549, 504 P.2d 76, 80 (1973).

■ When an affidavit is based on information learned through an informer, it must satisfy the two-pronged test set forth by the United States Supreme Court in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The magistrate must be informed of the underlying circumstances which formed the affiant's belief that a crime had been committed. In addition, the affiant must disclose the basis of his belief that the informer was credible or his information reliable. State v. Watling, 104 Ariz. 354, 453 P.2d 500 (1969); State v. Adams, 18 Ariz.App. 292, 501 P.2d 561 (1972); Giordenello v. United States, 357 U.S. 480, 78 S.Ct. 1245, 2 L.Ed.2d 1503 (1958).

■ In the present case, the magistrate had ample information on which to base a finding of probable cause. The affidavit indicated that the informer was known to be reliable from his participation in three supervised purchases within the week. It further indicated that the defendant had agreed to sell heroin to the informer, but that he would have to go to his apartment to get the heroin. Agent Bunting had observed the defendant leave his business and return a short time later. Some three hours before making his statement, Bunting had recovered six "rolls" of heroin from the informer, who stated that he had purchased them from defendant. The affidavit continued that the defendant's business had been under surveillance since the sale and that no one had been seen leaving. There was probable cause to believe that a crime had been committed at the defendant's business, and that the fruits of the crime would be discovered by a search of the premises.

■ The defendant, however, argues that the warrant was defective because Agent Bunting's affidavit was inadequate as to persons other than the defendant. We do not agree. Even if there were such a defect, it would not render the warrant invalid as to the defendant. The warrant, as it applied to the defendant and to the premises, contained an adequate description and was based on probable cause. The entire warrant would not be rendered invalid because portions of it might be vulnerable to challenge. State v. Watson, 113 Ariz. 218, 550 P.2d 89 (1976); State v. Snodgrass, 19 Ariz.App. 391, 507 P.2d 1003 (1973). "If a warrant is essentially valid, or is valid as to one command and not to another, the parts not essential or invalid may be treated as surplusage." Dow v. State, 207 Md. 80, 85, 113 A.2d 423, 425 (1955); see also State v. Masco, 103 N.J.Super. 277, 247 A.2d 136 (1968).

■ In addition, the defendant has no standing or legitimate expectation of privacy which would enable him to challenge the validity of the searches of third parties. A Fourth Amendment challenge of the search warrant's validity must prove not only that the search was illegal, but that it was illegal as to the person making the challenge. The United States Supreme Court has stated:

" * * * the values of the Fourth Amendment are preserved by a rule which limits the availability of the exclusionary rule to defendants who have been subjected to a violation of their Fourth Amendment rights." *United States v. Salvucci*, 448 U.S. 83, 95, 100 S.Ct. 2547, 2554, 65 L.Ed.2d 619, 630 (1980). See also *Rawlings v. Kentucky*, 448 U.S. 98, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980).

We find no error.

## UNDISCLOSED INDUCEMENTS FOR HUDSON'S TESTIMONY

Defendant contends that the trial court erred in denying his motion for new trial because of newly discovered evidence that suggests there were promises made to Hudson by the government which were not disclosed to defense counsel or to the jury. We do not agree.

At trial, Hudson testified as follows:

"Q Mr. Hudson, you did receive a thousand dollars or something, is that correct?

"A I received a thousand dollars after we had marked and completed the transaction with J.J. I did not know how much money I was going to get. I didn't know whether I was going to get any money until after this.

"Q Up to the time you made the purchase, had there been any promises made to you for money?

"A No, there had been no promises. There was a mention that there should be some reimbursement for my time that I spent.

"Q Was there any conditions attached by you on your going through and making the purchase?

"A Yes, there were conditions on my part.

"Q What were those conditions?

   \*    \*    \*    \*    \*    \*

"A * * * John Higgins is my brother-in-law and he is involved with drugs very deeply and I have known him since he has been twelve years old and a little kid and my whole intention and whole purpose of this whole thing was to get John on the rehabilitation program and at that time I had gone to Metro Narcotics. I talked to Mr. Perryman and to Steve Bunting. I told them what I had in mind.

At that time I said I would not do this deal unless we could get John on a program and they said they couldn't guarantee anything but they would try to do the best they could * * *."

Defendant contends, however, that there was an express promise made to Hudson regarding the treatment of Higgins in return for Hudson's testimony. At the motion for new trial, the defendant offered the affidavit of the prosecutor in the trial which stated:

"4. That it is my best recollection that during some of these discussions, Gus Hudson told me that the Tucson Police Department (Metro Narcotics) officers with whom he had had contact had agreed not to arrest or prosecute John Higgins for any narcotics offenses committed by Higgins in connection with the investigation of James Maddasion, of, that if Higgins were prosecuted, he would be guaranteed probation; that Hudson told your affiant that this agreement was made in consideration of Hudson's cooperation in the investigation of Maddasion and his subsequently testifying against Maddasion at trial.

"5. That at some point prior to the trial of Maddasion, Gus Hudson expressed concern that Higgins had been arrested and that his prosecution remained pending; that Hudson stated he did not want to testify unless the authorities lived up to their agreement with regard to Higgins.

"6. That it was understood between Gus Hudson and the Pima County Attorney's Office prior to the Maddasion trial that a plea agreement would be worked out with Higgins.

"7. To the best of my knowledge, information and belief, I did not communicate this information to defendant Maddasion's trial attorney, James Wilkes."

■ Admittedly, the prosecutor has a duty of disclosure, *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963); Rule 15.1, Arizona Rules of Criminal Procedure, 17 A.R.S., and a failure to disclose evidence of a promise for a witness's testimony can be grounds for a new trial. Rule 15.1(a)(7), Rules of Criminal Procedure, 17 A.R.S.; *State v. Holsinger*, 115 Ariz. 271, 564 P.2d 1238 (1977).

■ In the instant case, however, the testimony before the jury clearly indicates that there was some sort of "deal" involved. The additional information of specific promises would then have had little or no effect on the outcome of the trial.

> " * * * if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. * * *"
>
> *United States v. Agurs*, 427 U.S. 97, 112–13, 96 S.Ct. 2392, 2402, 49 L.Ed.2d 342, 354 (1976). See also *State v. Kelly*, 118 Ariz. 413, 577 P.2d 264 (1978).

The alleged newly discovered evidence suggesting a specific arrangement between Hudson and the prosecution does not create an additional doubt of defendant's guilt. We find no error.

■ Defendant further contends, however, that the "contingent" fee of $1,000 paid for Hudson's services as an informer and for his testimony is illegal. Although a fee paid to an informer is not necessarily improper, the Fifth Circuit Court of Appeals has stated:

> "Without some justification or explanation we cannot sanction a contingent fee agreement to produce evidence against particular named defendants as to crimes not yet committed." *Williamson v. United States*, 311 F.2d 441, 444 (5th Cir. 1962).

And the Ninth Circuit Court of Appeals has stated:

> "While a different result might obtain where a contingent fee is offered for activities leading to the conviction of a defendant in light of the ever present danger of governmentally subsidized perjury, (citations omitted) the legitimate objective of law enforcement and the constitutional protections accorded a criminal defendant do not appear tainted by the government's offering of a reward for the apprehension of one engaged in criminal activity." *United States v. Ladley*, 517 F.2d 1190, 1193 (9th Cir. 1975).

The distinction the Fifth and Ninth Circuits seem to be making is that a contingent fee paid to secure a conviction for a crime yet to be committed at the time of the fee agreement is improper, but if crimes are already being committed, then a contingent fee may be paid to discover the persons committing the crimes. We believe that the facts in the instant case fall in the latter category, since the defendant was already engaged in criminal activity and Hudson was being paid to discover evidence and testify as to that activity though the fee was not contingent upon a conviction. We do not believe that a contingent fee in itself should operate to void a conviction. As long as the facts are made known to the trier of fact, the informant's motivation is merely another factor to consider regarding his credibility. The right to cross-examination should cure any taint the contingent fee payment might create. We find no error.

Affirmed.

STRUCKMEYER, C. J., HOLOHAN, V. C. J., and HAYS and GORDON, JJ., concur.