91 P.3d 355

Dennis Wayne CANION, Petitioner,

v.

The Honorable David R. COLE, Judge of the Superior Court of the State of Arizona, In and For the COUNTY OF MARICOPA, Respondent Judge,

State of Arizona, ex rel., Richard M. Romley, Maricopa County Attorney, Real Party in Interest.

No. 1 CA–SA 04–0036.

Court of Appeals of Arizona, Division 1, Department D.

June 8, 2004.

Court of Appeals, Division Two, pursuant to Arizona Supreme Court Order filed February 25, 2004.

134

Martin Lieberman, P.C. By Martin Lieberman, Phoenix, Attorneys for Petitioner.

Richard M. Romley, Maricopa County Attorney's Office By Faith C. Klepper, Deputy County Attorney, Phoenix, Attorneys for Real Party in Interest.

OPINION

EHRLICH, Judge.

¶ 1 This action arises from a discovery dispute between the State and Dennis Wayne Canion. In post-conviction-relief ("PCR") proceedings, Canion unsuccessfully sought from the trial court the disclosure of documents to which he claims to have been entitled during pre-trial discovery. He then petitioned this court to accept jurisdiction of his special action and grant relief. He contends that the State continues to withhold from him exculpatory evidence despite its duties of disclosure as mandated by *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and Arizona Rule of Criminal Procedure ("Rule") 15.1 (2003).[1] In brief, we accept jurisdiction and hold that, as a matter of state and federal due process, the State's duty of disclosure does not simply end with the verdict.

## FACTUAL [2] AND PROCEDURAL BACKGROUND

¶ 2 Canion, while on parole, was driving a car when Glendale Police Officer David Madeya stopped him for traffic violations. Canion accompanied Madeya to the rear of the car as requested by the officer, and there Canion admitted that he was carrying a gun and a pocket knife. Madeya removed the gun, but, as he attempted to remove the knife from Canion's pocket, Canion began to struggle. At this point, Canion's passenger, Patricia Coburn, got out of the car. She was told by the officer to get back in the car and apparently was beginning to do so when Canion began to run back to the car. Madeya grabbed him, and Canion struck him several times. What then happened remains in dispute, but Madeya fatally shot Coburn. Can-

ion was convicted by a jury of first-degree (felony) murder.[3]

¶ 3 Canion initiated Rule 32 PCR proceedings in superior court, including a request of the Maricopa County Attorney's Office ("MCAO") for discovery of copies of the crime-scene diagram, copies of all photographs taken of the crime scene, and the Glendale Police Department Shooting Review Board reports and notes ("Police Shooting Reports"). In a letter to the MCAO, he sought not only those items but the reports of evidence submitted to the Arizona Department of Public Safety for analysis, and the requests to and responses of the allegedly involved federal law-enforcement agencies, including the Bureau of Alcohol, Tobacco, Firearms and Explosives. The MCAO made an effort to honor the requests, but, on September 9, 2003, a deputy sent Canion a letter stating in part:

> I generally have no problem providing defense attorneys in Rule 32 cases with copies of police reports and so forth. However, the requests in your letter go far beyond that and would require significant time and effort to comply with. At this stage in the proceedings, I believe there is a presumption that the State provided the required pretrial disclosure to Mr. Canion's trial attorney. I also believe that at this stage of the proceedings, it is not the State's burden to assist you in re-investigating the case.

¶ 4 This letter was consistent with an earlier response of the MCAO in which the deputy stated that "Canion does not explain why these items are necessary to file a petition for post-conviction relief. The State does not concede that Rule 15 discovery applies to post-conviction relief proceedings."

¶ 5 Canion filed a Motion To Compel Discovery ("Motion") asking for the "materials

---

1. Rule 15.1 was substantially amended in October 2003. We consider the previous version because the amendments apply only to cases filed on or after December 1, 2003.

2. The facts are fully set forth in *State v. Canion*, 199 Ariz. 227, 16 P.3d 788 (App.2000).

3. In sentencing Canion, the trial court found that the prosecutor did not "prove that [Canion] killed, attempted to kill, or intended to kill [Co-

burn] or that in the case of felony murder, [Canion] was a major participant in the underlying crime and acted with reckless disregard for human life." Canion was also convicted of second-degree murder, although this conviction was vacated, *Canion*, 199 Ariz. at 232 ¶ 20, 16 P.3d at 793, and aggravated assault (Count 3), misconduct involving weapons (Count 5), first-degree escape (Count 6) and solicitation to commit murder (Count 7).

that had not been disclosed to the defense prior to or during the trial of this case." He specifically wanted (1) a longer portion of the dispatch tape, (2) the notes or dispatch logs pertaining to the relevant radio transmissions or an acknowledgment that a search was made and that no such documents exist, (3) six aerial photographs of the crime scene, (4) all crime-scene photographs, (5) the crime-scene log, (6) the Glendale jail records, (7) the complete Police Shooting Reports regarding the incident, (8) any scientific reports of residue on Coburn's hands, (9) any reports of surveillance and other documents to impeach Madeya, (10) the complete Professional Standards Report and/or Use of Force Board Report on Madeya, (11) the internal affairs policy/procedure manual for Madeya and (12) Madeya's personnel file.

¶ 6 The State responded that it was not required by any rule of criminal procedure to produce any of the documents that might exist. It added that Canion was only seeking impeachment evidence and that such evidence could not support post-conviction relief, concluding that it could not be compelled to disclose any of the materials requested.

¶ 7 Canion replied that any materials that had not been disclosed to him before or during his trial pursuant to *Brady* and Rule 15.1 nonetheless still had to be disclosed pursuant to the same legal authority. In supplemental briefing, he attached an independent report of a forensic expert, the affidavit of Canion's trial counsel and the affidavit of a private investigator researching the matter. Canion added that the entire prosecution file should be provided to him, "expect[ing] that, if his motion to compel discovery is granted, he will find material and relevant exculpatory information that could cause the court to grant his petition for relief."

¶ 8 The State responded that, even were the trial court to allow such discovery in PCR proceedings, Canion had not shown sufficient good cause to obtain the requested documents. It also argued that, even if the materials alleged to exist were relevant, the standard for a PCR proceeding of good cause or a colorable claim of relief for newly discovered evidence was not met.

¶ 9 The trial court summarily denied Canion's Motion, and Canion asked this court for relief.

## JURISDICTION

¶ 10 The trial court's decision on a motion to compel discovery is not appealable, making it appropriate for special-action consideration. *See State Farm Mut. Auto. Ins. Co. v. Superior Court ex rel. Miel,* 167 Ariz. 135, 136, 804 P.2d 1323, 1324 (App.1991). This general proposition acquires, however, a peculiar cast in the context of Rule 32 proceedings because of the collateral nature of post-conviction relief.

¶ 11 "In Arizona, the appeal is the post-conviction proceeding of primary importance. The right to appeal is guaranteed by our constitution, Ariz. Const. art. 2, § 24, but the Rule 32 procedure is not.... Rule 32 is separate and apart from the right to appeal, and it is not designed to afford a second appeal." *State v. Carriger,* 143 Ariz. 142, 145, 692 P.2d 991, 994 (1984) (citation omitted), *cert. denied,* 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985). Nonetheless, PCR proceedings are critical because, while an "appeal is designed to give prompt, full appellate review to those who have grounds to believe they have not had a fair trial[,] ... Rule 32 'is designed to accommodate the unusual situation where justice ran its course and yet went awry.' " *Id.* at 146, 692 P.2d at 995 (citation omitted).

¶ 12 We accept for the purpose of this jurisdictional analysis that Canion was convicted having been denied pre-trial discovery to which he was entitled and that the trial court compounded the State's malfeasance by denying him that discovery in PCR proceedings. To now deny Canion interlocutory appellate intervention would mean to now deny him the opportunity to present evidence that the State violated his constitutional right to discovery. This would not only further delay the provision of due process but be a waste of his and judicial resources only precipitating additional collateral review.

¶ 13 We accept jurisdiction because Canion has no adequate remedy by appeal. Ariz.

R.P. Spec. Act. 1. Additionally, the issue is one of law and a matter of statewide importance. *Ariz. Dep't of Pub. Safety v. Superior Court ex rel. Falcone,* 190 Ariz. 490, 494, 949 P.2d 983, 987 (App.1997).

### DISCUSSION

¶ 14 A defendant in a criminal case has no general constitutional right to discovery, *Weatherford v. Bursey,* 429 U.S. 545, 559, 97 S.Ct. 837, 51 L.Ed.2d 30 (1977), but the disclosure of certain evidence is required as necessary to safeguard the defendant's due process. The United States Supreme Court held in *Brady* that the prosecution's suppression of evidence favorable to an accused "violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecutor." 373 U.S. at 87, 83 S.Ct. 1194. This evidence does not have to be requested by the defendant, *United States v. Agurs,* 427 U.S. 97, 110–11, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), because disclosure is a matter of due process. *Brady,* 373 U.S. at 87, 83 S.Ct. 1194; *see also United States v. Bagley,* 473 U.S. 667, 675, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985) (plurality opinion) ("The *Brady* rule is based on the requirement of due process.").

¶ 15 Rule 15.1, too, is an expression of due process. *State v. Jones,* 120 Ariz. 556, 560, 587 P.2d 742, 746 (1978). Its disclosure requirements are more extensive than those of *Brady. State v. Jessen,* 130 Ariz. 1, 4, 633 P.2d 410, 413 (1981). Rule 15.1(a)(7) provides:

> No later than 10 days after the arraignment ... the prosecutor shall make available to the defendant for examination and reproduction ... [a]ll material or information which tends to mitigate or negate the defendant's guilt as to the offense charged, or which would tend to reduce the defendant's punishment.[4]

¶ 16 It is true that, by its words, Rule 15.1 does not apply to PCR proceedings, but to agree with the State that this is conclusive would allow the prosecution that unlawfully failed to disclose exculpatory information in a timely manner to continue to evade that duty and thwart the due process of law to which an accused is entitled. The Arizona Supreme Court held in *State v. Schreiber,* 115 Ariz. 555, 556, 566 P.2d 1031, 1032 (1977), that a Rule 32 petition should be granted when the prosecution's non-disclosure of evidence denied the petitioner's right to due process, citing the United States and Arizona Constitutions.

¶ 17 The prosecution's responsibilities go beyond a duty to convict. *Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935) (The prosecution's interest "in a criminal prosecution is not that it shall win a case, but that justice shall be done.... It is as much [the prosecution's] duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.").

> A prosecution that withholds evidence on demand of an accused which, if made available, would tend to exculpate him or reduce the penalty helps shape a trial that bears heavily on the defendant. That casts the prosecutor in the role of an architect of a proceeding that does not comport with standards of justice.

*Brady,* 373 U.S. at 87–88, 83 S.Ct. 1194; *see also Banks v. Dretke,* 540 U.S. 668, ——, 124 S.Ct. 1256, 1275, 157 L.Ed.2d 1166 (2004) ("A rule thus declaring 'prosecutor may hide, defendant must seek' is not tenable in a system constitutionally bound to accord defendants due process.... Prosecutors' dishonest conduct or unwarranted concealment should attract no judicial approbation." (Citations omitted.)); *State v. Rodriguez,* 192 Ariz. 58, 64 ¶¶ 31–33, 961 P.2d 1006, 1012 (1998) (high standards expected of public attorneys).

¶ 18 Rule 15.1, like *Brady,* brings disclosure of exculpatory evidence within the confines of formal discovery, *see* Wayne R. LaFave et al., 5 *Criminal Procedure* § 24.3(b) (2d ed. 1999 & Supp.2004), but this does not imply that Rule 15.1 encompasses

---

4. Such materials and information are commonly referred to as "exculpatory," a word that we shall use as a general reference.

all of a defendant's due-process rights with regard to the disclosure of exculpatory evidence. Rather, Rule 15.1 is simply a pretrial expression of due process. The defendant's right to due process with regard to the disclosure of exculpatory evidence does not cease to exist after the verdict is rendered; the prosecution has a continuing duty to provide such evidence as was unlawfully withheld, including in the context of a PCR proceeding. *See Mooney v. Holohan,* 294 U.S. 103, 112, 55 S.Ct. 340, 79 L.Ed. 791 (1935) (due process violated because prosecutor learned during trial that witness committed perjury but failed to inform defendant); *Thomas v. Goldsmith,* 979 F.2d 746, 749–50 (9th Cir.1992); *Schreiber,* 115 Ariz. at 556, 566 P.2d at 1032.

¶ 19 There are three circumstances in which a *Brady* claim usually presents itself: first, where previously undisclosed evidence revealed that the prosecution introduced trial testimony that it knew or should have known was perjured; second, where the Government failed to accede to a defense request for disclosure of some specific kind of exculpatory evidence; and third, where the Government failed to volunteer exculpatory evidence never requested, or requested only in a general way. *Kyles v. Whitley,* 514 U.S. 419, 433, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995) (citing *Agurs,* 427 U.S. at 103–08, 96 S.Ct. 2392) (footnote omitted). Given the nature of these likely situations, over time, the *Brady* rule has evolved into a three-part test. "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Banks,* —— U.S. at ——, 124 S.Ct. at 1272 (quoting *Strickler v. Greene,* 527 U.S. 263, 281–82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)).

¶ 20 First, the *Brady* rule requires disclosure of evidence favorable to the accused, 373 U.S. at 87, 83 S.Ct. 1194, both exculpatory and for the purpose of impeachment. *Bagley,* 473 U.S. at 676, 105 S.Ct. 3375; *see also Giglio v. United States,* 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). A determination that the evidence is favorable does not mandate disclosure, however, but permits consideration of the second and third factors, the prosecution's suppression of the evidence and the resulting prejudice to the defendant.

¶ 21 Just as the obligation of due process imposes on the prosecution an affirmative duty of disclosure, obversely it forbids the prosecution from suppressing evidence favorable to the accused. *Brady,* 373 U.S. at 87, 83 S.Ct. 1194. This charge includes the prosecution's responsibility to search for exculpatory material not actually known to or possessed by the prosecution. In this regard, "a defendant's failure to request favorable evidence [does] not leave the Government free of all obligation." *Kyles,* 514 U.S. at 433, 115 S.Ct. 1555. Rather, "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case." *Id.* at 437, 115 S.Ct. 1555; *see also Pennsylvania v. Ritchie,* 480 U.S. 39, 43–45, 57–58, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (plurality opinion) (prosecutor had duty to obtain exculpatory evidence possessed by Children and Youth Services); *Bagley,* 473 U.S. at 671–73, 677–78, 105 S.Ct. 3375 (prosecutor should have obtained impeachment evidence possessed by federal agency); *Giglio,* 405 U.S. at 152–55, 92 S.Ct. 763 (*Brady* violation when one prosecutor did not disclose deal unknown to him between key witness and another prosecutor); *cf. State v. Meza,* 203 Ariz. 50, 55 ¶¶ 20–21, 50 P.3d 407, 412 (App.2002) (city crime laboratory arm of prosecution for purpose of disclosure); *Carpenter v. Superior Court,* 176 Ariz. 486, 489–90, 862 P.2d 246, 249–50 (App.1993) (law-enforcement agency performing criminal investigation within prosecution's control). *See generally* Mark D. Villaverde, Note, *Structuring the Prosecutor's Duty to Search the Intelligence Community for* Brady *Material,* 88 Cornell L.Rev. 1471, 1480–1512 (2003) (discussing Supreme Court jurisprudence and federal appellate approaches to prosecution's duty to disclose).

¶ 22 "Prejudice" might best be described as, had the exculpatory materials been lawfully disclosed, "the favorable evidence could reasonably be taken to put the

whole case in such a different light as to undermine confidence in the verdict." *Kyles*, 514 U.S. at 435, 115 S.Ct. 1555, *quoted in Banks*, —— U.S. at ——, 124 S.Ct. at 1276. As the Court stated in *Agurs*, 427 U.S. at 112–13, 96 S.Ct. 2392,

> Such a finding [of guilt] is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. [Footnote omitted.] [5]

The Court later referred in *Bagley* to "a reasonable probability," one "sufficient to undermine confidence in the outcome." 473 U.S. at 682, 105 S.Ct. 3375 (quoted in part in *Strickler*, 527 U.S. at 280, 119 S.Ct. 1936); see *Kyles*, 514 U.S. at 434, 115 S.Ct. 1555 (whether defendant "received a fair trial, understood as a trial resulting in a verdict worthy of confidence"); *cf. Schreiber*, 115 Ariz. at 558, 566 P.2d at 1034.

■ ¶ 23 The purpose of the *Brady* rule "is not to displace the adversary system as the primary means by which truth is uncovered, but to ensure that a miscarriage of justice does not occur." *Bagley*, 473 U.S. at 675, 105 S.Ct. 3375. Rule 15.1 has a similar

end. *See Meza*, 203 Ariz. at 62 ¶ 56, 50 P.3d at 419 (Hall, J., dissenting in part). The prosecution has a duty to facilitate that quest. *See Banks*, —— U.S. at ——, 124 S.Ct. at 1275; *Brady*, 373 U.S. at 87–88, 83 S.Ct. 1194; *Berger*, 295 U.S. at 88, 55 S.Ct. 629. Accordingly, although the formal requirements of Rule 15.1 may end with a verdict, the State's provision of due process does not, and the prosecution cannot be allowed to hide its previous failure to provide exculpatory evidence behind the strictures of that rule. *See Banks*, —— U.S. at ——, 124 S.Ct. at 1275. Due process mandates disclosure of evidence favorable to the accused that was suppressed by the State to the prejudice of the defendant.

■ ¶ 24 The prosecution's duty of disclosure is not without limitation certainly. *See Kyles*, 514 U.S. at 437, 115 S.Ct. 1555. "Mere speculation that some exculpatory material may have been withheld is unlikely to establish good cause for a discovery request on collateral review." *Strickler*, 527 U.S. at 286, 119 S.Ct. 1936; *see Agurs*, 427 U.S. at 109–10, 96 S.Ct. 2392 ("The mere possibility that . . . undisclosed information might have helped the defense, or might have affected the outcome of the trial" is not sufficient.). Further, the evidence that was unlawfully withheld must be considered cumulatively and in light of the other evidence before a conclusion may be drawn that the defendant was prejudiced by the prosecution's conduct. *See Kyles*, 514 U.S. at 434–437, 115 S.Ct. 1555.[6]

■ ¶ 25 "When police or prosecutors conceal significant exculpatory or impeaching material in the State's possession, it is ordi-

---

5. *See also United States v. Colon–Munoz*, 318 F.3d 348, 358 (1st Cir.2003); *Lorraine v. Coyle*, 291 F.3d 416, 441–42 (6th Cir.2002) (belated disclosure of identity of witness not a *Brady* violation because disclosure would not have affected result of proceeding), *cert. denied*, 538 U.S. 947, 123 S.Ct. 1621, 155 L.Ed.2d 489 (2003); *United States v. Alwan*, 279 F.3d 431, 438–39 (7th Cir.2002) (belated disclosure of secret government document not a *Brady* violation because evidence could not have affected outcome of case); *Mastracchio v. Vose*, 274 F.3d 590, 602–04 (1st Cir.2001) (prosecution use of perjured testimony not a *Brady* violation when different verdict would not have resulted); *Buell v. Mitchell*, 274 F.3d 337, 361–63 (6th Cir.2001) (significance of *Brady* violation dependent on whether evi-

dence would have changed outcome of trial); *Leka v. Portuondo*, 257 F.3d 89, 99–103 (2d Cir. 2001) (belated disclosure of identity of witness who had information materially affecting defense a *Brady* violation); *United States v. Fisher*, 106 F.3d 622, 634–35 (5th Cir.1997) (belated disclosure of report containing impeachment evidence of prosecution's key witness a *Brady* violation because defendant precluded from making full use of information), *rev'd on other grounds, Ohler v. United States*, 529 U.S. 753, 120 S.Ct. 1851, 146 L.Ed.2d 826 (2000).

6. *See also Duncan v. Cain*, 278 F.3d 537, 539–40 (5th Cir.) (cumulative effect of evidence in context of entire record would not have resulted in different outcome), *cert. denied*, 537 U.S. 829,

narily incumbent on the State to set the record straight." *Banks,* —— U.S. at ——, 124 S.Ct. at 1263. On the record before us, it appears that Canion has shown good cause and made colorable allegations of newly discovered materials suggesting that evidence that should have been disclosed to him was not. The trial court erred by not considering his claims in the light of the State's continuing duty to disclose such information as due process requires.

¶ 26 Upon remand in this case, it is incumbent upon the prosecution to respond to Canion's allegations. Those materials and information about which there is no doubt as to their exculpatory value should be disclosed to Canion if they have not already been given to him. Any other materials and information of arguable exculpatory value should be given to the trial court for it to engage in suitable review, including if appropriate an in-chambers examination of the evidence. *See United States v. Lampazianie,* 251 F.3d 519, 526 (5th Cir.2001) (district court examined files and found no exculpatory evidence); *United States v. Dent,* 149 F.3d 180, 191 (3d Cir. 1998) (in-chambers inspection of material revealed no *Brady* information), *cert. denied,* 525 U.S. 1085, 119 S.Ct. 833, 142 L.Ed.2d 689 (1999); *United States v. Sasso,* 59 F.3d 341, 351 (2d Cir.1995) (same), *vac. on other grounds, Armienti v. United States,* 234 F.3d 820 (2d Cir.2000); *Love v. Johnson,* 57 F.3d 1305, 1314–15 (4th Cir.1995) (*Brady* violation when district court failed to conduct in-chambers inspection of state agency records after

123 S.Ct. 127, 154 L.Ed.2d 43 (2002); *United States v. White,* 238 F.3d 537, 539–41 (4th Cir.) (same), *cert. denied,* 532 U.S. 1074, 121 S.Ct. 2235, 150 L.Ed.2d 225 (2001); *United States v. Gonzalez–Montoya,* 161 F.3d 643, 649–50 (10th Cir.1998) (same), *cert. denied,* 526 U.S. 1033, 119 S.Ct. 1284, 143 L.Ed.2d 377 (1999); *United States v. Amlani,* 111 F.3d 705, 712–14 (9th Cir. 1997) (same); *United States v. Pelullo,* 105 F.3d 117, 123–24 (3d Cir.1997) (cumulative effect of non-disclosure of evidence resulted in verdict not "worthy of confidence"); *United States v. Lloyd,* 71 F.3d 408, 412 (D.C.Cir.1995) (cumulative effect of undisclosed materials did not undermine confidence in verdict); *Smith v. Sec'y of Dep't of Corr.,* 50 F.3d 801, 834 (10th Cir.) (disclosure of cumulative suppressed evidence might have led to different outcome), *cert. denied,* 516 U.S. 905, 116 S.Ct. 272, 133 L.Ed.2d 193 (1995).

The Supreme Court recognized that the prosecution has a unique position.

defendant made showing that records might contain favorable evidence). The court then should "consider directly any adverse effect that the prosecutor's failure to respond might have had on the preparation or presentation of the defendant's case," *see Bagley,* 473 U.S. at 683, 105 S.Ct. 3375, resolve the issue whether Canion suffered prejudice as a result and fashion an appropriate remedy.

*CONCLUSION*

¶ 27 This matter is remanded for proceedings consistent with this opinion.

CONCURRING: DONN KESSLER, Presiding Judge and PHILIP HALL, Judge.

[S]howing that the prosecution knew of an item of favorable evidence unknown to the defense does not amount to a *Brady* violation, without more. But the prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of "reasonable probability" is reached. This in turn means that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police. But whether the prosecutor succeeds or fails in meeting this obligation (whether, that is, a failure to disclose is in good faith or bad faith, *see Brady,* 373 U.S., at 87, 83 S.Ct., at 1196–1197), the prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable. *Kyles,* 514 U.S. at 437–38, 115 S.Ct. 1555.